**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:25-cv-20858-RAR**

**HERIBERTO VALIENTE,**

     **Plaintiff,**

**v.**

**BAPTIST HEALTH SOUTH FLORIDA INC., and PALM BEACH CREDIT ADJUSTORS, INC. d/b/a KENDALL CREDIT AND BUSINESS SERVICE, INC.**

     **Defendants.**

_____/

<u>**MOTION TO DISMISS COMPLAINT**</u>

Defendants, Baptist Health South Florida, Inc. ("Baptist Health") and Palm Beach Credit Adjustors, Inc. d/b/a Kendall Credit and Business Service, Inc. ("PBCA"), by and through their undersigned counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and S. D. Fla. L.R. 7.1, move for entry of an order dismissing the Complaint filed by Plaintiff, Heriberto Valiente ("Valiente"), as an impermissible shotgun pleading, for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted.

## PERTINENT ALLEGATIONS OF THE COMPLAINT

### A.     Valiente's July 11, 2024, Visit to Kendale Lakes Urgent Care

On July 11, 2024, Valiente went to Kendale Lakes Urgent Care, provided his insurance information and received medical treatment. [DE 1 ¶¶ 8, 9, 10]. On August 23, 2024, Baptist Health sent Valiente a Statement which stated that "Your insurance carrier has informed us that the balance due is your responsibility. … If you have any questions about your out-of-pocket expense, please contact your insurance provider so they can explain how your claim was processed. Your insurance provider determines benefit coverage, and any patient responsibility" and stated that the insurance provider identified $643.20 as Valiente's out-of-pocket expense (the "643 Bill"). [*Id.* ¶ 18, Ex. B].[1]

On November 25, 2024, PBCA sent Valiente a Statement which stated that "You have not responded to our first collection notice, therefore we will now pursue full collection efforts" and indicated that Valiente still owed $643.20 (the "643 Letter"). [DE 1 ¶ 38, Ex. E].[2] Valiente alleges that, on December 5, 2024, his attorney sent a letter to Kendall Credit and Business Service ("Kendall Credit") (a fictitious name), via United State Postal Service ("USPS") Certified Mail, tracking no. 9207 1902 3589 0900 0029 7889 69, advising that Valiente was represented by counsel

---

[1]     A legible copy is attached hereto as **Exhibit 1** because Complaint Ex. B is illegible.
[2]     A legible copy is attached hereto as **Exhibit 2** because Complaint Ex. E is illegible.

and disputed the 643 Bill (the "December Notice"). [*Id.* ¶ 58, Ex. G]. On January 6, 2025, PBCA

sent Valiente a Statement for the unpaid $643.20 (the "Second 643 Letter"). [*Id.* ¶ 66, Ex. I].[3]

**B.**   **Valiente's July 20, 2024, Visit to Kendale Lakes Urgent Care**

On July 20, 2024, Valiente went back to Kendale Lakes Urgent Care, provided his

insurance information and received follow-up treatment for his injury. [*Id.* ¶¶ 13, 14]. On August

22, 2024, Baptist Health sent Valiente a Request for Payment, which stated that "Your insurance

carrier has informed us that the balanced due is your responsibility. … If you have any questions

about your out-of-pocket expense, please contact your insurance provider so they can explain how

your claim was processed. Your insurance provider determines benefit coverage, and any patient

responsibility" and stated that the insurance provider identified $445.80 as Valiente's out-of-pocket

expense (the "445 Bill"). [DE 1 ¶ 17, Ex. A].[4] On September 3, 2024, Baptist Health sent Valiente

a Request for Payment, which stated that "If you have any questions about your out-of-pocket

expense, please contact your insurance provider so that they can explain how your claim was

processed. Your insurance provider determines benefit coverage and any patient financial

responsibility." [*Id.* ¶ 21, Ex. C (emphasis supplied)].[5]

Valiente alleges that, on October 9, 2024, his attorney sent Baptist Health a letter via USPS

Certified Mail, tracking no. 9207 1902 3589 0900 0029 1386 41, advising that Valiente was

represented by counsel and disputed the 445 Bill (the "October Notice"). [DE 1 ¶ 23, Ex. D]. On

November 25, 2024, PBCA sent Valiente a Statement which stated that "You have not responded

to our first collection notice, therefore we will now pursue full collection efforts" and indicated

---

[3]     A legible copy is attached hereto as **Exhibit 3** because Complaint Ex. I is illegible.
[4]     A legible copy is attached hereto as **Exhibit 4** because Complaint Ex. A is illegible.
[5]     A legible copy is attached hereto as **Exhibit 5** because Complaint Ex. C is illegible.

that Valiente still owed $445.80 in out-of-pocket expenses (the "445 Letter"). [DE 1 ¶ 48, Ex. F].[6]

Valiente alleges that the December Notice also advised that Valiente disputed the 445 Bill. [DE 1

¶ 58, Ex. G]. On January 6, 2025, PBCA sent Valiente a Statement indicating that the $445.80 out-

of-pocket expense remained unpaid (the "Second 445 Letter"). [DE 1 ¶ 60, Ex. H].[7]

## PROCEDURAL HISTORY

On January 20, 2025, despite being informed on multiple occasions that his insurance

provider - - not Baptist Health - - was the entity that determined benefit coverage and any patient

financial responsibility, Valiente sued Kendall Credit (a fictitious name owned by PBCA) for

violation of Fla. Stat. §§ 559.72(18) and 559.72(9), in the Miami-Dade County Court at Case No.

2025-012672-cc-05. On January 31, 2025, PBCA filed a Limited Notice of Appearance and

Motion to Quash Service of Process. On February 24, 2025, Valiente filed the Complaint in the

instant matter, which is a confusing, "everything but the kitchen sink" shotgun pleading that fails

to state a plausible claim for relief. [DE 1]. On February 25, 2025, Valiente filed a Notice of

Voluntary Dismissal of the County Court matter.

## LEGAL ARGUMENT

## I.    THE COMPLAINT IS AN IMPERMISSIBLE SHOTGUN PLEADING

A complaint must contain "a short and plain statement of the claim showing that the pleader

is entitled to relief." Fed. R. Civ. P. 8(a). A complaint also "must make it possible 'to know which

allegations of fact are intended to support which claim(s) for relief.'" *Am. Cas. Co. of Reading v.

Superior Pharmacy, LLC*, No. 813CV00622T27, 2013 WL 12156519, at *1 (M.D. Fla. Oct. 29,

2013) (quoting *Anderson v. Dist. Bd. of Trs. of Cent. Fla. Comm. Coll.*, 77 F. 3d 364, 366 (11th

Cir. 1996)). "Neither the Court, nor the Defendants, should be required to 'sift through the facts

---

[6]    A legible copy is attached hereto as **Exhibit 6** because Complaint Ex. F is illegible.

[7]    A legible copy is attached hereto as **Exhibit 7** because Complaint Ex. H is illegible.

presented and decide … which are material to the particular cause of action asserted.'" *Superior Pharmacy*, at *1 (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp*., 305 F. 3d 1293, 1296 n.9 (11th Cir. 2002)). Complaints that violate Rule 8(a) are referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F. 3d 1313, 1320 (11th Cir. 2015).

Shotgun pleadings "fail to one degree or another ... to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Vibe Micro, Inc. v. Shabanets*, 878 F. 3d 1291, 1294-95 (11th Cir. 2018) (quoting *Weiland*, 792 F. 3d at 1323). *See also Millennium Funding, Inc. v. 1701 Mgmt. LLC*, 576 F. Supp. 3d 1192, 1201 (S.D. Fla. 2021) ("[o]verall, shotgun pleadings do not establish a connection between 'the substantive count and the factual predicates ... [and] courts cannot perform their gatekeeping function with regard to the averments of [the plaintiff's claim].'") (quoting *Wagner v. First Horizon Pharm. Corp.*, 464 F. 3d 1273, 1279-80 (11th Cir. 2006)).[8]

Here, all seven counts of the Complaint incorporate all 66 general factual allegations, without differentiating which facts pertain to which defendant and which cause of action. "Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief …" *Wagner*, 464 F. 3d at 1279 (citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam)). District courts routinely dismiss such complaints, and the Eleventh Circuit routinely affirms such dismissals. *See, e.g., Johnson Enters. of Jacksonville, Inc. v. FPL Grp. Inc.*, 162 F. 3d 1290, 1332 (11th Cir. 1998) (concluding that a complaint which "began with

---

[8]      "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings. … They waste scarce judicial resources, 'inexorably broaden[ ] the scope of discovery,' 'wreak havoc on appellate court dockets,' and 'undermine[ ] the public's respect for the courts.'" *Vibe Micro*, 878 F. 3d at 1295. *See also Millennium*, 576 F. Supp. 3d at 1201 (the Eleventh Circuit has "specifically instructed district courts to dismiss shotgun pleadings as 'fatally defective.'") (quoting *B.L.E. v. Ga.*, 335 F. App'x. 962, 963 (11th Cir. 2009)).

thirty-seven paragraphs of general allegations that were incorporated by reference into each count of the complaint," was an impermissible shotgun pleading); *Barmapov v. Amuial*, 986 F. 3d 1321, 1325 (11th Cir. 2021) (affirming dismissal of shotgun complaint, in which, because of incorporation of general allegations, multiple counts "include factual allegations that are immaterial to the underlying causes of action"). These same defects exist here.

## II.   THE COURT LACKS SUBJECT MATTER JURISDICTION

The case-or-controversy requirement set forth in Article III § 2 of the U.S. Constitution is satisfied "only where a plaintiff has standing." *Preisler v. Eastpoint Recovery Grp., Inc.*, No. 20-CV-62268-RAR, 2021 WL 2110794, at *2 (S.D. Fla. May 25, 2021); *see also Cambridge Christian Sch., Inc. v. Fla. High Sch. Athletic Ass's, Inc.*, 115 F. 4th 1266, 1280 (11th Cir. 2024). "[A] plaintiff must establish standing before a court can consider the merits of a given claim." *Preisler*, 2021 WL 2110794 at *2 (citations omitted). Additionally, "a plaintiff must establish standing as to each claim he … asserts." *Id*.

The irreducible constitutional minimum of standing consists of three elements: "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Moreover, the injury in fact must be both "(a) concrete and particularized, … and (b) actual or imminent, not conjectural or hypothetical[.]" *Lujan*, 504 U.S. at 560.

Tangible injuries, such as physical and monetary harms, readily qualify as concrete injuries under Article III. *See Spokeo*, 578 U.S. at 340. Intangible injuries "sometimes qualify as concrete, but not always." *Trichell v. Midland Credit Mgmt., Inc.*, 964 F. 3d 990, 997 (11th Cir. 2020). And some concrete, intangible injuries may also flow from statutory violations. *Spokeo*, 578 U.S. at 341. However, "a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement

whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.' … Rather, 'Article III standing requires a concrete injury even in the context of a statutory violation.'" *Trichell*, 964 F. 3d at 997 (quoting *Spokeo*, 578 U.S. at 341).

### A.   No Concrete Injury in Fact

In an attempt to manufacture standing, Valiente provides conclusory allegations regarding injuries he allegedly sustained by receiving requests for payment in the mail after he refused to pay for the medical treatment he received from Baptist Health.

### *Confusion, Frustration and Anger*

Valiente alleges that the 445 Bill, 643 Bill, 643 Letter, 445 Letter and Second 445 Letter all made him "confused, frustrated, up and angry" and "upset … frustrated and angered." [DE 1 ¶¶ 19, 20, 40, 41, 50, 51, 64, 65]. These allegations are nothing more than insufficient "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Lattimore v. Wells Fargo Bank, N.A.*, 590 F. App'x 912, 913 (11th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[C]onfusion - - on its own - - is not an injury in fact." *Preisler*, at *4 (citing *Cooper v. Atl. Credit & Fin. Inc.*, 822 F. App'x 951, 955 (11th Cir. 2020)).[9]

Likewise, conclusory statements regarding "stress, worry, anxiety, frustration, and anger" are not "sufficiently concrete and particularized to establish Article III standing." *Luce v. LVNV Funding LLC*, 21-CV-82143-RUIZ/MAYNARD, 2023 W 1472582, at *5 (S.D. Fla. Jan. 18, 2023) (granting motion to dismiss complaint for violation of the FDCPA for lack of subject matter jurisdiction), *R&R adopted*, 2023 WL 1466815 (S.D. Fla. Feb. 2, 2023). A plaintiff simply cannot

---

[9]    *See also Suazo v. Resurgent Cap. Servs. LP*, 21-24016-CIV-MARTINEZ, 2023 WL 6037421, at *5 (S.D. Fla. Sept. 15, 2023); *Pierre v. Midland Credit Mgmt., Inc*., 29 F. 4th 934, 939 (7th Cir. 2022).

rely on his "feelings of distress, confusion or anxiety to fabricate concrete injury" because "[s]uch conjectural harms 'cannot satisfy Article III.'" *Preisler*, at *5.

### Fear of a Hypothetical Future Injury and Hiring a Lawyer

Valiente alleges that he feared the "collection tactics would only escalate" and he hired an attorney to "dispute[] the debts Baptist Health sought to collect" [DE 1 ¶ 22] (even though the Statements clearly state that Valiente's insurance provider determined the patient responsibility, not Baptist Health). Valiente alleges that he believed "Kendall Credit was going to employ more invasive and aggressive collection methods - - regardless of legally [sic]…" [*Id.* ¶ 72].

A "hypothetical, future injury" is "not an injury in fact." *Crowder v. Andreu, Palma, Lavin & Solis, PLLC*, No. 2:19-cv-820-SPC-NPM, 2021 WL 1338767, at *5 (M.D. Fla. 2021) ("allegations of *possible* future injury are not sufficient") (quoting *Clapper v. Amnesty Inten. USA*, 568 U.S. 398, 409 (2013)). "Where a 'hypothetical future harm' is not 'certainly impending,' plaintiffs 'cannot manufacture standing merely by inflicting harm on themselves." *Crowder*, 2021 WL 1338767 at *6. A self-imposed fear of a hypothetical future injury is simply not an injury in fact. *Id.* at *5.[10] Valiente cannot decide to fear a hypothetical future event and then claim he was injured by his own decision to do so in order to manufacture standing.

Additionally, hiring a lawyer is not a "legally cognizable harm[]." *Pierre*, 29 F. 4th at 939. As the Seventh Circuit explained, "the concreteness requirement would be an empty one if all it took was contacting a lawyer and filing suit." *Id. See also Van Vleck v. Leikin, Ingber, & Winters, P.C.*, No. 22-1859, 2023 WL 3123696, at *7 (6th Cir. April 27, 2023) ("Van Vleck 'cannot show

---

[10]     *See also Buchholz v. Meyer Njus Tanick, P.A.*, 946 F. 3d 855, 865 (6th Cir. 2020) ("a plaintiff cannot create an injury by taking precautionary measures against a speculative fear."); *Clapper*, 568 U.S. at 416 ("[Plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

harm simply by pointing to the cost of hiring counsel' … The hiring of counsel did not 'flow' from the service of process, then, but rather defense of the lawsuit and owing of the debt."). Similarly, Valiente's hiring of counsel flows from his refusal to pay for the medical treatment he received, not from receiving mail regarding his unpaid medical expenses.

***Time***

Valiente alleges he was worried that Baptist Health was "wrongfully balancing-billing [sic] for services for which Baptist Health was already fully compensated" and researched "for information about this rights and balancing-billing [sic], spending several hours across multiple days searching for internet [sic] for resources, information, and guidance." [DE 1 ¶ 19, 20]. Valiente alleges that when he received the 643 Letter, 445 Letter and Second 445 Letter, he "waste[d] at least five (5) minutes" doing something he fails to identify and spent "at least fifteen (15) minutes preparing and delivering" each letter to his attorney [*id.* ¶¶ 40, 41, 50, 51, 64, 65].

First, self-imposed anticipatory research for a potential future injury is not a concrete injury in fact sufficient to confer standing. Second, spending "at least five (5) minutes" doing something that is not identified is not a concrete injury. Third, in the digital age of emails and instant communications, it is not plausible that Valiente spent a total of 45 minutes forwarding three letters to the attorney that he hired for purposes of suing Baptist Health and PBCA. However, even if Valiente did spend 45 minutes forwarding 3 letters to his attorney, time spent providing documents to a lawyer to prepare a lawsuit is not a "legally cognizable harm[]." *See Pierre*, 29 F. 4th at 939. A plaintiff "'cannot manufacture standing merely by inflicting harm on themselves[,]' … including by 'bringing suit for the cost of bringing suit[.]'" *Heres v. Medicredit, Inc.*, No. 23-cv-24815-BLOOM/Torres, 2024 WL 3291738, at *4 (S.D. Fla. July 3, 2024).

Valiente fails to explain how the alleged time he spent caused him any detriment, financial or otherwise. This alleged wasted time is akin to a generalized claim of "annoyance" which is not sufficient to confer standing. *See Granham v. TrueAccord Corp.*, No. 22 CV 00531, 2023 WL 2664010, at *5 (N.D. Ill. Mach 28, 2023).

### *Loss of Sleep*

Valiente alleges that after he received the Second 445 Letter and Second 643 Letter, he "began struggling to sleep due to stress and anxiety" and has "lost more than (2) hours of sleep on at least seven (7) separate occasions due to the stress and anxiety caused by the Second 445 [] Letter and Second 643 [] Letter." [DE 1 ¶¶ 72, 73].

Valiente's bare allegation that he allegedly lost sleep after refusing to pay for his medical treatment, with no further elaboration, is insufficient to establish standing. Further, Valiente's alleged loss of sleep is not a result of receiving the letters, but rather the result of his choice to attempt to avoid financial responsibility. *See, e.g., Carlisi v. Sprintcom, Inc.*, NO. 06-60751-CIV-DIMITROULEAS, 2006 WL 8432613, at *1 (S.D. Fla. Sept. 6, 2006) (dismissing claim for breach of the Federal Communications Act § 222(a), which plaintiff alleged resulted in her suffering "anxiety, fear, mental anguish, and loss of sleep and concentration" based on the "long-standing rule that a suit brought under federal law cannot be maintained seeking damages for mental anguish and emotional damages alone"). Without a concrete injury, all Valiente is left with are non-actionable letters. "No concrete harm, no standing." *TransUnion*, 594 U.S. at 417.

### B.     No Traceability

Even if Valiente suffered a concrete injury, which he has not alleged, he failed to establish standing because any such injury is not traceable to the alleged FDCPA and FCCPA violations. "Traceability requires a 'causal connection between the injury and the conduct complained of.'"

9

*Preisler*, 2021 WL 21108794 at *6 (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F. 3d 1263, 1273 (11th Cir. 2003)). "The main inquiry is whether 'the line of causation between the illegal conduct and injury [is] too attenuated' to establish traceability." *Id.*

Here, the traceability question is whether Valiente's alleged intangible injuries are causally related to the alleged FDCPA and FCCPA violations. The letters Valiente received were all formulaic statements attempting to obtain payment for Valiente's medical treatment; they did not threaten legal action. As such, any anxiety, loss of sleep or other intangible injuries Valiente allegedly sustained were of his own doing. As this Court has explained: "In other words, it was the plaintiff's worry about the consequences of not paying her debt - - rather than the letter - - that caused the distress." *Preisler*, 2021 WL 21108794 at *6 (dismissing complaint with prejudice for lack of standing based on plaintiff's failure to allege any injury traceable to an FDCPA violation).

## C.      No Common Law Analogue for Asserted Intangible Injuries

To determine whether an intangible harm is concrete, courts must determine whether there is a close historical or common-law analogue for the asserted intangible injury:

> When considering whether an alleged intangible harm is concrete, or "real," we look to see if it matches up with a harm "traditionally recognized as providing a basis for lawsuits in American courts." *TranUnion*, 141 S. Ct. at 2204. *Spokeo* offered, and *TransUnion* affirmed, a "simple instruction" about how to do so: "see if a new harm is similar to an old harm." *Muransky*, 979 F. 3d at 931. Although an "exact duplicate" of a traditionally recognized harm is not required, the new allegations cannot be missing an element "essential to liability" under the comparator tort. *TransUnion*, 141 S. Ct. at 2209 (quotation omitted).

*Hunstein v. Preferred Collection and Mgmt. Servs., Inc.*, 48 F. 4th 1236, 1242 (11th Cir. 2022). *See also Trichell*, 964 F. 3d at 997 (courts must "consider whether the alleged intangible injury bears a 'close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts'"); *Davis v. Prof'l Parking Mgmt. Corp.*, No. 22-14026, 2023 WL

4542690, at *2 (11th Cir. July 14, 2023) (per curiam) ("'the common law furnishes no analog[ue]' to claims brought under the FDCPA that are nearly identical to the claims Davis brought here").

Here, Valiente fails to identify an analogous traditional harm for the alleged state or federal statutory violations. Even if the Court accepts that Valiente was injured by his receipt of Baptist Health and PBCA's letters, without any analogue to a plausible historical comparator the harm is still purely statutory. *See, e.g., Hunstein*, 48 F. 4th at 1244. As the Eleventh Circuit explained:

> *TransUnion* thus affirmed that this common-law tort comparison is not make-work for lower courts, and that when carrying it out we do not look at tort elements in a vacuum. We make the comparison between statutory causes of action and those arising under the common law with an eye toward evaluating commonalities between the harms. *See Muransky*, 979 F. 3d at 926.

*Id.* Examples of intangible harms "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts" include, for example, "reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion*, 594 U.S. at 425. Valiente failed to identify any historical or common-law analogue for his alleged injuries.

## III.   THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

The above analysis should end the inquiry and result in dismissal of the Complaint. Nevertheless, the Court may address other bases for dismissal. *Silver Crown Invest., LLC v. Team Real Estate Mgmt., LLC*, 349 F. Supp. 3d 1316, 1334 (S.D. Fla. 2018). Dismissal also is appropriate because Valiente has failed to state any cognizable claim.

### A.   Legal Standard on a Motion to Dismiss

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 677-78 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As such, a complaint "must consist of more than 'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Lattimore v. Wells*

*Fargo Bank, N.A.*, 590 F. App'x 912, 913 (11th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). A "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. And the Court need not accept mere legal conclusions as plausible factual allegations. *See Brinson v. Welsh*, 709 F. App'x 582, 584 (11th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678).

"Plausibility is the key, as the 'well-pled allegations must nudge the claim 'across the line from conceivable to plausible.'" *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F. 3d 1327, 1333 (11th Cir. 2010) (quotations omitted). "In short, the complaint must not merely allege a misconduct, but must demonstrate that the pleader is entitled to relief." *Gavilan v. Balans, L.C.*, No. 14-22791-CIV, 2014 WL 6979625, at *1 (S.D. Fla. Dec. 9, 2014) (citing *Iqbal*, 556 U.S. at 678). Moreover, "when exhibits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.'" *Gill as Next Friend of K.C.R. v. Judd*, 941 F. 3d 504, 514 (11th Cir. 2019) (citations omitted). *See also Felix v. Canovas*, No. 23-CV-24710-RAR, 2023 WL 8698357, at *2 (S.D. Fla. Dec. 15, 2023) ("if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls").

**B.  Violation of 15 USC § 1692c(a)(2) against PBCA (Count 1); Violation of Fla. Stat. § 559.72(18) against PBCA (Count 5); and Violation of 15 USC § 1692e(8) against PBCA (Count 4)**

Valiente alleges that PCBA violated 15 USC § 1692c(a)(2) (Count 1), Fla. Stat. § 559.72(18) (Count 5) and 15 USC § 1692e(8) (Count 4) by sending the 643 Letter, 445 Letter and Second 643 Letter despite knowing Valiente was represented by counsel and disputed the 643 Bill and 445 Bill. [DE 1 ¶¶ 75, 77, 91]. "Both 15 U.S.C. § 1692c(a)(2) and Fla. Stat. Ann. § 559.72(18) require that a plaintiff prove that a debt collector have 'actual knowledge' of the debtor's representation by counsel with respect to the specific account at issue in order to prove a violation." *Rivera v. Portfolio Recovery Assocs., LLC*, No. 23-61138-CIV-SINGHAL, 2024 WL 4483311, at *4 (S.D. Fla. Aug. 1, 2024) (citations omitted). *See also Bacelli v. MFP, Inc.*, 729 F. Supp. 2d 1328,

1334 (M.D. Fla. 2010) (rejecting argument that a creditor's knowledge of a debtor's legal representation should be imputed to the debt collector under the FCCPA).

### The 643 Letter and Second 643 Letter

On November 25, 2024, PBCA sent Valiente the 643 Letter. [DE 1 ¶ 38, Ex. E]. Valiente does not allege that, prior to November 25, 2024, he advised PBCA he was represented by counsel and disputed the 643 Bill. Valiente's claims fail as to the 643 Letter.

Valiente alleges that, on December 5, 2024, his lawyer sent Kendall Credit the December Notice, and that on January 5, 2025, PBCA sent Valiente the Second 643 Letter. [*Id.* ¶ 58, 60, Exs. G, H]. However, as explained below in sub-section E, Kendall Credit did not exist as a legal entity on December 5, 2024. Additionally, Valiente alleges that the December Notice was sent by USPS Certified Mail [DE 1 ¶ 58, Ex. G], but the USPS Tracking History states only that the letter is in "pre-shipment, awaiting item." A true and correct copy of the Tracking History is attached as **Exhibit 8**.[11] In other words, the alleged December Notice was never sent to the fictitious name. Complaint Exhibit G controls over Valiente's unsupported conclusions that PBCA knew that Valiente was represented by counsel and disputed the 643 Bill. [DE 1 ¶¶ 27, 58, 59, 76]. *See Gill*, 941 F. 3d at 514; *Felix*, 2023 WL 8698357, at *2.

### The 445 Letter

Valiente alleges that, on October 9, 2024, his lawyer sent the October Notice to Baptist Health advising that Valiente was represented by counsel and disputed the 445 Bill. [DE 1 ¶¶ 23,

---

[11]    Baptist Health requests that the Court take judicial notice of the USPS Tracking History pursuant to Fed. R. Evid. 201. *See, e.g., Jackson v. First Nat'l Bank of Omaha*, No. CV 20-1295 DSF, 2022 WL 423440, *2 n.2 (C.D. Cal. Jan. 18, 2022) (granting the Plaintiff's request for judicial notice of the USPS Tracking Results and Tracking History).

Ex. D]. Valiente alleges Baptist Health informed PBCA of the representation, yet PBCA sent the 445 Letter on November 25, 2024. [DE 1 ¶ 48, Ex. F].

The October Notice states it was mailed from a law firm in Fort Lauderdale, Florida, to Baptist Health's registered agent in Tallahassee, Florida, and that it was mailed via USPS Certified Mail. [DE 1 Ex. D]. The USPS Tracking History, however, demonstrates that the item originated in Rochester, New York, on October 9, 2024, and arrived in Miami, Florida on November 4, 2024, where it is still "In Transit" and is "Arriving Late." A true and correct copy of the USPS Tracking History is attached as **Exhibit 9**.[12] In other words, the alleged October Notice never was delivered to Baptist Health. Complaint Exhibit D controls over Valiente's unsupported conclusions that Baptist Health knew that Valiente was represented by counsel and disputed the 445 Bill. [DE 1 ¶¶ 23, 24, 25, 27]. *See Gill*, 941 F. 3d at 514; *Felix*, 2023 WL 8698357, at *2.

### C.    Violation of 15 USC § 1692g and 1692e against PBCA (Count 2)

Valiente alleges that PCBA violated 15 USC § 1692g(a) by failing to include statutorily required information in its initial communication with Valiente, and, as a result, used "false, deceptive, or misleading representation or means in connection with the collection of any debt" in violation of 15 USC § 1692e. [DE 1 ¶¶ 81-83]. Valiente alleges the 643 Letter was PBCA's "first written communication" regarding the 643 Bill; and the 445 Letter was PBCA's "first written communication" regarding the 445 Bill. [DE 1 ¶¶ 38, 42, 81; Exs. E, F]. Both Statements, however, clearly state: "You have not responded to our first collection notice." [*See* DE 1, Exs. E, F].

Not surprisingly, Valiente failed to attach either of the first written communications referred to in his Exhibits E and F, both of which contain the requisite language for initial communications

---

[12]      Baptist Health requests that the Court take judicial notice of the USPS Tracking History pursuant to Fed. R. Evid. 201.

pursuant to 15 USC § 1692g(a). True and correct copies of the initial communications are attached hereto as **Exhibits 10 and 11**. While some courts within the Eleventh Circuit previously ruled that the trial court may not properly consider documents on a motion to dismiss unless they were attached to the complaint or specifically referenced therein, the Eleventh Circuit recently clarified the law on the application of the incorporation-by-reference doctrine, stating: "[W]hen resolving a motion to dismiss or a motion for judgment on the pleadings, a court may properly consider a document not referred to or attached to a complaint under the incorporation-by-reference doctrine if the document is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F. 4th 1292, 1300 (11th Cir. 2024).[13]

Obviously, here, where Plaintiff alleges he never received PBCA's initial communications, the terms of the initial communications are central to this case, and the authenticity of those communications is not subject to any dispute. *See e.g., O'Shea v. Omi Holdings, Inc.*, No. 21-14428, at *1 n.1 (11th Cir. July 24, 2023) (considering, on a motion to dismiss, an employment offer, employment agreement and employment agreement because, *inter alia*, they were central to the plaintiff's claims and of undisputed authenticity). PBCA's initial communications were sent to the same address as all the other communications sent by Baptist Health and PBCA. It is simply not plausible that PBCA would intentionally fail to send initial communications - - and **only** the initial communications - - to intentionally violate the FDCPA knowing it would be sued for failing to comply with the statute.

---

[13]     *See also Project Veritas v. Cable News Network*, 121 F. 4th 1267, 1272 n.5 (11th Cir. Nov. 7, 2024) (citing *Johnson*) (stating that it could consider a written policy of the defendant without converting a motion to dismiss to a motion for summary judgment because the policy was central to the case and its authenticity was not disputed); *Swinford v. Santos*, No. 22-13675, 121 F. 4th 179, 187 (11th Cir. 2024) (citing *Johnson* and reiterating that a document not referenced in the complaint but attached to a motion to dismiss may be considered if it is central to the plaintiff's claim and its authenticity is not challenged).

**D.      Violation of 15 USC § 1692e(2)(A) against PBCA (Count 3)**

Valiente alleges that PBCA violated 15 USC § 1692e(2)(A) by sending the 445 Letter, 643 Letter, Second 445 Letter and Second 643 Letter, all of which allegedly attempted to collect debts that had already been paid; or, alternatively, by attempting to collect an amount that Valiente did not owe. [DE 1 ¶ 87]. Valiente, however, ignores that the 445 Bill and 643 Bill - - both sent to Valiente before his lawyer allegedly sent the October or December Notices (neither of which were delivered) - - advised him how to dispute the debt and whom to contact to dispute the debt.

The 445 Bill, sent on August 21, 2024, and 643 Bill, sent on August 22, 2024, both stated: "Your insurance carrier has informed us that the balance due is your responsibility … If you have any questions about your out-of-pocket expense, please contact your insurance provider so they can explain how your claim was processed. Your insurance provider determines benefit coverage, and any patient responsibility." [DE 1, Exs. A, B]. Moreover, when PBCA received the accounts, its initial communications to Valiente (sent on October 14, 2024, for both accounts) stated:

> Call or write to us by 11/18/24, to dispute all or part of the debt. If you do not, we will assume that our information is correct. If you write to us by 11/18/2024, we must stop collection on any amount you dispute until we send you information that shows you owe the debt. You may use the form below or write to us without the form. You may also include supporting documents.

(*See* Exs. 10, 11). Instead of contacting his insurance provider, Baptist Health or PBCA to inquire why there was a balance, or to challenge the amounts being sought, Valiente waited until February 24, 2025, to file the lawsuit. It is reprehensible for a person to receive medical treatment, fail to pay, receive multiple letters identifying how the out-of-pocket amount was determined and providing guidance as to whom to contact to dispute the amounts, intentionally fail to contact the identified entities to dispute the debt, and then sue to recover $1,000 in statutory damages plus attorneys' fees and waiver of the unpaid medical expenses.

### E.   Violation of Fla. Stat. § 559.72(18) against Baptist Health (Count 6)

Valiente alleges that Baptist Health violated 559.72(18), Fla. Stat. when PBCA sent the 643 Letter, 445 Letter, Second 643 Letter and Second 445 Letter to Valiente despite knowing Valiente was represented. "Actual knowledge is required to prove violations of Fla. Stat. § 559.72(18)." *Bray v. PNC Bank, N.A.*, 196 F. Supp. 3d 1282, 1287 (M.D. Fla. 2016). [DE 1 ¶¶ 100, 101].

### *The 643 Letter and Second 643 Letter*

Valiente alleges that his lawyer sent the December Notice to Kendall Credit on December 5, 2024, that Kendall Credit received it and "knew" that Valiente was represented by counsel. [DE 1 ¶¶ 58, 59; Ex. G]. However, on March 20, 2024, **260 days before** the December Notice was allegedly mailed, Kendall Credit merged with PBCA, which became the surviving entity. A copy of the Articles of Merger filed with the Florida Department of State, Division of Corporations (the "Florida DOS") is attached as **Exhibit 12**.[14] As a result of the merger, Kendall Credit became inactive. A copy of the Florida DOS detail by entity name is attached as **Exhibit 13**.[15] On July 24, 2024, PBCA registered Kendall Credit as a fictitious name with the Florida Secretary of State. A copy of the Florida DOS fictitious name detail is attached as **Exhibit 14**.[16] It is simply not plausible

---

[14]    Baptist Health requests that the Court take judicial notice of the Articles of Merger pursuant to Fed. R. Evid. 201. Records of the Florida Department of State, Division of Corporations, are available at www.sunbiz.org, a verified website of a public agency. Rule 201(b) permits courts to "judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questions." This Court properly may take judicial notice of such public records. *See, e.g Am. Marine Tech, Inc. v. World Grp. Yachting, Inc*., 418 F. Supp. 3d 1075, 1082 (S.D. Fla. 2019) ("[B]ecause the Sunbiz Filing is publicly available on the Florida Department of State's website, at www.sunbiz.org, the Court may take judicial notice of such records) (collecting cases).

[15]    PBCA requests that the Court take judicial notice of the detail by entity name page pursuant to Fed. R. Evid. 201.

[16]    PBCA requests that the Court take judicial notice of the fictitious name detail page pursuant to Fed. R. Evid. 201.

that the December Notice, allegedly sent to a fictitious name, was received by PBCA and provided it with ***actual knowledge*** that Valiente was represented by counsel.

Additionally, PBCA sent the 643 Letter on November 25, 2024, **ten days before** Plaintiff's attorney allegedly sent the December Notice. Accordingly, the 643 Letter could not and did not violate Fla. Stat. § 559.72(18). Moreover, PBCA and Baptist Health are two separate entities. Valiente does not allege that PBCA is an actual or apparent agent of Baptist Hospital. "'Agency is a legal relationship created by an express or implied agreement or by operation of law whereby the agent is authorized to act for the principal….'" *Ocana v. Ford Motor Co.*, 992 So. 2d 319, 326 (Fla. 3d DCA 2008) (quoting *Karl Rove & Co. v. Thornburgh*, 39 F. 3d 1273, 1296 (5th Cir. 1994)). *See also Kane Furniture Corp. v. Miranda*, 506 So. 2d 1061, 1064 (Fla. 2d DCA 1987)) ("the extent of control is the most important factor in determining whether a person is an independent contractor or an employee … The right of control as to the mode of doing the work is the principal consideration. … If a person is subject to the control or direction of another as to his results only, he is an independent contractor; if he is subject to control as to the means used to achieve the results, he is an employee.") (citations omitted).

To demonstrate that PBCA is an actual agent of Baptist Health, Valiente would have to allege: (1) acknowledgement by Baptist Health that PBCA was acting as its agent; (2) acceptance of the undertaking by PBCA; and (3) control by Baptist Health over PBCA's day-to-day activities during the course of the agency. *Ocana*, 992 So. 2d at 326. However, the Complaint contains no allegations that Baptist Health directs PBCA in terms of what it should do in its daily activities, and when, where and how it shall be done; or that Baptist Health has the ability to hire, fire or supervise PBCA employees or owners. Instead, Valiente merely alleges that Baptist Hospital

"contracted" with Kendall Credit. [DE 1 ¶¶ 25-27]. That allegation does not support the existence of an agency relationship between Baptist Health and PBCA.

The same conclusion is warranted with respect to apparent agency. "Apparent agency exists only if each of the following three elements is present: (1) a representation by the purported principal; (2) reliance on that representation by a third party; and (3) a change in position by the third party in reliance on the representation." *Ocana*, 992 So. 2d at 326 (citing *Mobil Oil Corp. v. Bransford*, 648 So. 2d 119, 121 (Fla. 1995)). "'Apparent authority' does not arise from the subjective understanding of the person dealing with the purported agent, nor from appearances created by the purported agent himself; instead, 'apparent authority' exists only where the principal creates the appearance of an agency relationship." *Id.*, at 326 (citation omitted). Here, the Complaint contains no allegation that Baptist Health (the purported principal) made any representation to Valiente that PBCA was acting as its purported agent, or that Valiente relied on or changed his position in reliance on any representation. Count 6 fails to state a plausible claim for violation of 559.72(18), Fla. Stat. against Baptist Health and properly should be dismissed.

### The 445 Letter and Second 445 Letter

Valiente alleges that his lawyer sent the October Notice to Baptist Health on October 9, 2024, that Baptist Health received the Notice and "knew" that Valiente was represented by counsel. [DE 1 ¶¶ 23, 24; Ex. D]. Valiente concludes that when PBCA sent the 445 Letter on November 25, 2024, and the Second 445 Letter to Valiente on January 6, 2025, that Baptist Health violated 559.72(18), Fla. Stat. As discussed above, there are zero allegations in the Complaint establishing an actual or apparent agency relationship with PBCA. Baptist Health did not violate Fla. Stat. § 559.72(18), and Count 6 of the Complaint properly should be dismissed.

### F.       Violation of Fla. Stat. § 559.72(6) against Baptist Health (Count 7)

Valiente alleges that Baptist Health violated Fla. Stat. § 559.72(6) when PBCA communicated with Valiente after being informed by Baptist Health that Valiente disputed the debt or by not notifying PBCA that Valiente disputed the debt. [DE 1 ¶¶ 105, 106].

First, the October Notice is the only Notice that allegedly was sent to Baptist Health, and it only pertained to the 445 Debt, not the 643 Debt. [*Id.*, Ex. D]. Accordingly, the allegation that Baptist Health had any notice from Valiente's attorney that the 643 Debt was disputed is demonstrably false.

Second, the October Notice purports to reflect that it was mailed from Valiente's lawyer's law firm in Fort Lauderdale, Florida, to Baptist Health's registered agent in Tallahassee, Florida, and that it was mailed via USPS Certified Mail. [*Id.*]. However, the USPS Tracking History demonstrates that item originated in Rochester, New York, on October 9, 2024, and arrived in Miami, Florida on November 4, 2024, where it indicates that it is still "In Transit" and is "Arriving Late." (*See* Ex. 9). In other words, the alleged October Notice was never delivered to the address to which it was purportedly sent. Complaint Exhibit D controls over Valiente's unsupported conclusions that Baptist Health knew that Valiente disputed the debt. [DE 1 ¶¶ 23, 24, 25]. *See Gill*, 941 F. 3d at 514; *Felix*, 2023 WL 8698357, at *2.

WHEREFORE, Defendants Baptist Health South Florida Inc., and Palm Beach Credit Adjustors, Inc. d/b/a Kendall Credit and Business Service, Inc., respectfully request that the Court (1) dismiss the Complaint [DE 1]; (2) award Baptist Health and PBCA their attorneys' fees and costs to the fullest extent permitted by law (including, but not limited to, under the FDCPA (15 U.S.C. § 1692k) and FCCPA (Fla. Stat. § 559.77(2)); and (3) grant such further relief as the Court deems just and appropriate under the circumstances.

Respectfully submitted,

ISICOFF RAGATZ
601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel.: (305) 373-3232
Fax: (305) 373-3233

By: /s/ Catherine A. Mancing
      Eric D. Isicoff
      Florida Bar No. 372201
      Isicoff@irlaw.com
      Catherine A. Mancing
      Florida Bar No. 23765
      Mancing@irlaw.com

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF on this 26th day of March 2025 upon the following:

Thomas Patti, Esq.
Victor Zabaleta, Esq.
Patti Zabaleta Law Group
110 SE 6th Street, 17th Floor
Fort Lauderdale, FL 33301
Tel.: (561) 542-8550
E-mail: Tom@pzlg.legal
E-mail: Victor@pzlg.legal

By: /s/ Catherine A. Mancing
      Catherine A. Mancing