## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.  1:25-cv-20858-RAR

**HERIBERTO VALIENTE**,

      Plaintiff,

v.

                                           **JURY TRIAL DEMANDED**

**BAPTIST HEALTH SOUTH FLORIDA INC**,
and **PALM BEACH CREDIT ADJUSTORS INC**
*d/b/a*  **KENDALL CREDIT AND BUSINESS
SERVICE INC**,

      Defendants.

_____/

### FIRST AMENDED COMPLAINT

Plaintiff Heriberto Valiente ("Plaintiff") sues Defendant Baptist Health South Florida Inc and Palm Beach Credit Adjustors Inc *d/b/a*  Kendall Credit and Business Service Inc (collectively, the "Defendants") for violations the Florida Consumer Collection Practices Act ("FCCPA") and Fair Debt Collection Practices Act ("FDCPA").

### JURISDICTION AND VENUE

1.     Jurisdiction of this Court arises under 15 U.S.C. §1692k(d), 28 U.S.C. § 1331, and 28 U.S.C. § 1337.

2.     Venue in this District is proper because Plaintiff resides here, Defendants transact business here, and the complained conduct of Defendants occurred here.

### PARTIES

3.     Plaintiff is a natural person, and a citizen of the State of Florida, residing in #Matter.County# County, Florida.

4.     Defendant Baptist Health South Florida Inc ("Baptist Health") is a Florida corporation, with its principal place of business located in Coral Gables, Florida.

5.      Defendant Palm Beach Credit Adjustors Inc *d/b/a* Kendall Credit and Business Service Inc ("Kendall Credit") is a Florida corporation, with its principal place of business located in Boynton Beach, Florida.

## DEMAND FOR JURY TRIAL

6.      Plaintiff, respectfully, demands a trial by jury on all counts and issues so triable.

## ALLEGATIONS

7.      Kendale Lakes Urgent Care is the name of an out-patient medical facility that provides, among other things, walk-in medical services to consumers for non-emergent medical issues, of which is owned and operated by Baptist Health.

8.      On July 11, 2024, Plaintiff sustained a laceration to his right leg that required medical attention (the "Injury").

9.      On July 11, 2024, Plaintiff sought and receive treatment for the Injury from Baptist Health by and through the Kendale Lakes Urgent Care, of included the application of sutures to the laceration.

10.     On July 11, 2024, Baptist Health requested insurance information from Plaintiff to treat the Injury on and, in response, Plaintiff provided his UnitedHealth insurance information to Baptist Health.

11.     Baptist Health billed UnitedHealth for the treatment of the Injury it provided Plaintiff on July 11, 2024, and was paid $428.80.

12.     The $428.80 paid to and accepted by Baptist Health fully satisfied the amount owed by Plaintiff to Baptist Health for the treatment rendered on July 11, 2024.

13.     On July 20, 2024, Plaintiff sought and received follow-up treatment for the Injury from Baptist Health by and through the Kendale Lakes Urgent Care, of which included removal of the sutures placed on July 11, 2024, and, despite Plaintiff's objection, x-rays of the injury.

14.     On July 20, 2024, Baptist Health requested insurance information from Plaintiff to treat the Injury and, in response, Plaintiff provided his UnitedHealth insurance information to Baptist Health.

15.     Baptist Health billed UnitedHealth for the treatment of the Injury it provided Plaintiff on July 20, 2024, and was paid $297.20.

16.     The $297.20 paid to and accepted by Baptist Health fully satisfied the amount owed by Plaintiff to Baptist Health for the treatment rendered on July 20, 2024.

17.     Baptist Health knew that Plaintiff did not owe any additional amount to it (Baptist Health) following the acceptance of payment from UnitedHealth for the medical services rendered on July 11, 2024, and July 20, 2024.

18.     Despite knowing it had no right in contract or law to do so, Baptist Health sought to collect additional funds from Plaintiff in connection the medical services rendered on July 11, 2024, and July 20, 2024.

19.     On August 22, 2024, Baptist Health sent Plaintiff a bill which, for the first time, stated that the total the services rendered on July 20, 2024, was $743.00 and that Plaintiff owed Baptist Health $445.80, due immediately, after subtracting the $297.20 already paid to Baptist Health. Attached as Exhibit A is a copy of this bill (the "445 Bill").

20.     On August 23, 2024, Baptist Health sent Plaintiff a bill which, for the first time, stated that the total the services rendered on July 11, 2024, was $1,072.00 and that Plaintiff owed

Baptist Health $643.20, due immediately, after subtracting the $428.80 already paid to Baptist Health. Attached as Exhibit B is a copy of this bill (the "643 Bill").

21.    Upon receipt of the 445 Bill and 643 Bill, Plaintiff became confused, frustrated, upset, and angry because Plaintiff believed Baptist Health was wrongfully balancing-billing for services for which Baptist Health was already fully compensated and, now, Baptist Health was demanding almost $1,000.00 from Plaintiff, due immediately.

22.    As a direct result of receiving the 445 Bill and 643 Bill, Plaintiff lost two hours of wages, valued at $40.00 an hour based on his employment as manager, to address the issue with his attorney.

23.    Confused, frustrated, upset, and angry, by the 445 Bill and 643 Bill, Plaintiff began researching for information about his rights and balancing-billing, spending approximately five (5) hours, valued at $200.00, across multiple days searching for internet for resources, information, and guidance.

24.    On September 11, 2024, while still researching the matter, Plaintiff received another bill from Baptist Health regarding the treatment provided on July 20, 2024, again claiming the total amount was $743.00, that $297.20 was already paid, and that Plaintiff owed $445.80 to Baptist Health, due immediately. Attached as Exhibit C is a copy of this bill (the "Second 445 Bill").

25.    Believing Baptist Health's collection tactics would only escalate in light of the Second 445 Bill, and because Plaintiff disputed the debts Baptist Health sought to collect, Plaintiff contacted and hired an attorney.

26.    On October 9, 2024, *via* certified mail through the United States Postal Service ("USPS"), written notice was sent to Baptist Health providing that: (1) Plaintiff disputed the debts;

(2) Plaintiff demanded validation of the debts; (3) Plaintiff was represented by counsel with respect to the debts; (4) provided the contact information of his attorney; and (5) that all correspondence regarding the debts must be directed to Plaintiff's attorney. Attached as Exhibit D is a copy of the notice (the "October Notice").

27.     Due to a regional weather delay, USPS was delayed in delivering the October Notice until approximately October 31, 2024.

28.     On a date better known by Defendants, Baptist Health contracted with Kendall Credit to collect, or attempt to collect, the debts from Plaintiff.

29.     On a date better known by Defendants, Kendall Credit, on behalf of Baptist Health, began attempting to collect the debts from Plaintiff.

30.     In contracting with Kendall Credit to collect, or attempt to collect, the debts from Plaintiff, Baptist Health notified Kendall Credit that, *among other things*: [1] the existence of the debts; [2] the creditor of the debts; and [3] the amount of the debts.

31.     Kendall Credit is a business entity engaged in the business of soliciting consumer debts for collection.

32.     Kendall Credit is a business entity engaged in the business of collecting consumer debts.

33.     Kendall Credit regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

34.     Kendall Credit is registered with the Florida Office of Financial Regulation as a "Consumer Collection Agency."

35.     Kendall Credit maintains all the records specified in Rule 69V-180.080, Florida Administrative Code.

36.     The records specified by Rule 69V-180.080, Florida Administrative Code, of which Kendall Credit does maintain, are current to within one week of the current date.

37.     For Kendall Credit's "Consumer Collection Agency" license to remain valid, Kendall Credit is required to maintain, *at minimum*, all records specified in Rule 69V-180.080, Florida Administrative Code, and keep such records current within one week of the current date.

38.     Rule 69V-180.080(3)(e) of the Florida Administrative Code commands that Kendall Credit *shall* maintain: "[t]he debtor's account of activity disclosing… a record of payments made by the debtor, including the date received and the amount and balance owing."

39.     Rule 69V-180.080(9)(a)-(b) of the Florida Administrative Code commands that Kendall Credit *shall* maintain: "basic information about the debt including, at minimum… [d]ocumentation of the debt provided by the creditor," as well as "[t]he date the debt was incurred and the date of the last payment."

40.     On a date better known by Defendants, Kendall Credit, on behalf of Baptist Health, sent a letter, internally dated October 14, 2024, to Plaintiff in an attempt to collect $643.20 in connection with the medical services rendered by Baptist Health on July 11, 2024 (the "First 643 Collection Letter"). Attached as Exhibit E is a copy of the First 643 Collection Letter.

41.     The First 643 Collection Letter is Kendall Credit's first communication with Plaintiff in connection with the collection of the $643.20 allegedly owed to Baptist Health for the medical services rendered on July 11, 2024 (the "643 Debt").

42.     Kendall Credit is required to provide "validation information" in the First 643 Collection Letter. *See* 12 C.F.R. § 1006.34(c).

43.     The "validation information" that Kendall Credit was required to provide in the First 643 Collection Letter includes, but is not limited to, "information about the debt." *See* 12 C.F.R. § 1006.34(c)(2).

44.     The "information about the debt" that Kendall Credit was required to provide in the First 643 Collection Letter includes, but is not limited to, an itemization of the 643 Debt on "[t]he itemization date." *See* 12 C.F.R. § 1006.34(c)(2)(vi)

45.     The "itemization date" Kendall Credit is required to use must be one of five different dates, namely: (i) The last statement date, which is the date of the last periodic statement or written account statement or invoice provided to the consumer by a creditor; (ii) The charge-off date, which is the date the debt was charged off; (iii) The last payment date, which is the date the last payment was applied to the debt; (iv) The transaction date, which is the date of the transaction that gave rise to the debt; or (v) The judgment date, which is the date of a final court judgment that determines the amount of the debt owed by the consumer.

46.     In the 643 Collection Letter, Kendall Credit attempts to use uses "10/06/24" as the itemization date.

47.     October 06, 2024, is not the date of the last periodic statement or written account statement or invoice provided Plaintiff by Baptist Health regarding the 643 Debt.

48.     October 06, 2024, is not the charge-off date of the 643 Debt.

49.     October 06, 2024, is not the date the last payment was applied to the 643 Debt.

50.      No final court judgement exists with respect to the amount of the 643 Debt owed by Plaintiff.

51.     Kendall Credit failed to provide Plaintiff with the required validation information required by 12 CFR § 1006.34(a) in the First 643 Collection Letter.

52.     Kendall Credit failed to disclose the amount of the 643 Debt in the First 643 Collection Letter, as required by 15 U.S.C. § 1692g(a)(1), by failing to itemize the 643 Debt in accordance with 12 CFR § 1006.34(a).

53.     The First 643 Collection Letter is a communication from Baptist Hospital, by and through Kendall Credit, to Plaintiff directly.

54.     The First 643 Collection Letter does not disclose or otherwise state that Plaintiff disputes the 643 Debt.

55.     The First 643 Collection Letter falsely represents the amount of the 643 Debt.

56.     Further, the "validation information" that Kendall Credit was required to provide in the First 643 Collection Letter includes, but is not limited to "[i]nformation about consumer protection." *See* 12 C.F.R. § 1006.34(c)(3).

57.     The "[i]nformation about consumer protection" that Kendall Credit was required to provide in the First 643 Collection Letter includes, but is not limited to:

(i)     The date that the debt collector will consider the end date of the validation period and a statement that, if the consumer notifies the debt collector in writing on or before that date that the debt, or any portion of the debt, is disputed, the debt collector must cease collection of the debt, or the disputed portion of the debt, until the debt collector sends the consumer either verification of the debt or a copy of a judgment.

(ii)     The date that the debt collector will consider the end date of the validation period and a statement that, if the consumer requests in writing on or before that date the name and address of the original creditor, the debt collector must cease collection of the debt until the debt collector sends the consumer the name and address of the original creditor, if different from the current creditor.

(iii)     The date that the debt collector will consider the end date of the validation period and a statement that, unless the

> consumer contacts the debt collector to dispute the validity
> of the debt, or any portion of the debt, on or before that date,
> the debt collector will assume that the debt is valid.

*See* 12 C.F.R. § 1006.34(c)(3)(i)-(iii).

58.    The "validation period" is "the period starting on the date that a debt collector provides the validation information required by paragraph (c) of this section and ending 30 days after the consumer receives or is assumed to receive the validation information." 12 C.F.R. § 1006(b)(5).

59.    With respect to calculating the "end of the validation period," 12 C.F.R. § 1006(b)(5) provides that, "[f]or purposes of determining the end of the validation period, the debt collector may assume that a consumer receives the validation information on any date that is at **least five days (excluding legal public holidays identified in 5 U.S.C. 6103(a), Saturdays, and Sundays) after the debt collector provides it**." 12 C.F.R. § 1006(b)(5).

60.    October 14, 2024, is the date Kendall Credit attempted to provide the "validation information" for purposes of compliance with 12 C.F.R. § 1006(b)(5) in the First 643 Collection Letter.

**61.**    Five days (excluding legal public holidays identified in 5 U.S.C. § 6103(a), Saturdays, and Sundays) after October 14, 2024, is October 21, 2024.

**62.**    Thirty (30) days after October 21, 2024, is November 20, 2024.

**63.**    In the First 643 Collection Letter, Kendall Credit represented "11/18/2024" as the "date that the debt collector will consider the end date of the validation period" pursuant to 12 C.F.R. § 1006.34(c)(3)(i). *See* First 643 Collection Letter (stating, "If you write us by 11/18/2024 we must stop collection on any amount you dispute until we send you information that shows you owe the debt.").

64.     In the First 643 Collection Letter, Kendall Credit represented "11/18/2024" as the "date that the debt collector will consider the end date of the validation period" pursuant to 12 C.F.R. § 1006.34(c)(3)(ii). *See* <u>First 643 Collection Letter</u> (stating, "Write to ask for the name and address of the original creditor, if different from the current creditor. If you write by 11/18/2024, we must stop collection until we send you that information.").

65.     In the First 643 Collection Letter, Kendall Credit represented "11/18/2024" as the "date that the debt collector will consider the end date of the validation period" pursuant to 12 C.F.R. § 1006.34(c)(3)(iii). *See* <u>First 643 Collection Letter</u> (stating, "Call or write us by 11/18/2024, to dispute all or part of this debt").

66.     The end of the validation period represented in the First 643 Collection Letter, *i.e.*, October 18, 2024, is shorter than the minimum validation period required by 12 C.F.R. § 1006.34(b)(5), *i.e.,* October 21, 2024.

67.     In the First 643 Collection Letter, Kendall Credit failed to properly provide the end of the validation period, shortening the length of the validation period, in violation of 12 C.F.R. §§ 1006.34(b)(5) and (c)(3).

68.     On a date better known by Defendants, Kendall Credit, on behalf of Baptist Health, sent a letter, internally dated October 14, 2024, to Plaintiff in an attempt to collect $445.380 in connection with the medical services rendered by Baptist Health on July 20, 2024 (the "First 445 Collection Letter"). Attached as Exhibit F is a copy of the First 445 Collection Letter.

69.     The First 445 Collection Letter is Kendall Credit's first communication with Plaintiff in connection with the collection of the $445.80 allegedly owed to Baptist Health for the medical services rendered on July 20, 2024 (the "445 Debt").

70.     Kendall Credit is required to provide "validation information" in the First 445 Collection Letter. *See* 12 C.F.R. § 1006.34(c).

71.     The "validation information" that Kendall Credit was required to provide in the First 445 Collection Letter includes, but is not limited to, "information about the debt." *See* 12 C.F.R. § 1006.34(c)(2).

72.     The "information about the debt" that Kendall Credit was required to provide in the First 445 Collection Letter includes, but is not limited to, an itemization of the 445 Debt on "[t]he itemization date." *See* 12 C.F.R. § 1006.34(c)(2)(vi)

73.     The "itemization date" Kendall Credit is required to use must be one of five different dates, namely: (i) The last statement date, which is the date of the last periodic statement or written account statement or invoice provided to the consumer by a creditor; (ii) The charge-off date, which is the date the debt was charged off; (iii) The last payment date, which is the date the last payment was applied to the debt; (iv) The transaction date, which is the date of the transaction that gave rise to the debt; or (v) The judgment date, which is the date of a final court judgment that determines the amount of the debt owed by the consumer.

74.     In the 445 Collection Letter, Kendall Credit attempts to use uses "10/02/24" as the itemization date.

75.     October 02, 2024, is not the date of the last periodic statement or written account statement or invoice provided Plaintiff by Baptist Health regarding the 445 Debt.

76.     October 02, 2024, is not the charge-off date of the 445 Debt.

77.     October 02, 2024, is not the date the last payment was applied to the 445 Debt.

78.     No final court judgement exists with respect to the amount of the 445 Debt owed by Plaintiff.

79.     Kendall Credit failed to provide Plaintiff with the required validation information required by 12 CFR § 1006.34(a) in the First 445 Collection Letter.

80.     Kendall Credit failed to disclose the amount of the 445 Debt in the First 445 Collection Letter, as required by 15 U.S.C. § 1692g(a)(1), by failing to itemize the 445 Debt in accordance with 12 CFR § 1006.34(a).

81.     The First 445 Collection Letter is a communication from Baptist Hospital, by and through Kendall Credit, to Plaintiff directly.

82.     The First 445 Collection Letter does not disclose or otherwise state that Plaintiff disputes the 445 Debt.

83.     The First 445 Collection Letter falsely represents the amount of the 445 Debt.

84.     The "[i]nformation about consumer protection" that Kendall Credit was required to provide in the First 445 Collection Letter includes, but is not limited to:

(i)     The date that the debt collector will consider the end date of the validation period and a statement that, if the consumer notifies the debt collector in writing on or before that date that the debt, or any portion of the debt, is disputed, the debt collector must cease collection of the debt, or the disputed portion of the debt, until the debt collector sends the consumer either verification of the debt or a copy of a judgment.

(ii)    The date that the debt collector will consider the end date of the validation period and a statement that, if the consumer requests in writing on or before that date the name and address of the original creditor, the debt collector must cease collection of the debt until the debt collector sends the consumer the name and address of the original creditor, if different from the current creditor.

(iii)   The date that the debt collector will consider the end date of the validation period and a statement that, unless the consumer contacts the debt collector to dispute the validity

of the debt, or any portion of the debt, on or before that date,
the debt collector will assume that the debt is valid.

*See* 12 C.F.R. § 1006.34(c)(3)(i)-(iii).

85.     The "validation period" is "the period starting on the date that a debt collector provides the validation information required by paragraph (c) of this section and ending 30 days after the consumer receives or is assumed to receive the validation information." 12 C.F.R. § 1006(b)(5).

86.     With respect to calculating the "end of the validation period," 12 C.F.R. § 1006(b)(5) provides that, "[f]or purposes of determining the end of the validation period, the debt collector may assume that a consumer receives the validation information on any date that is at **least five days (excluding legal public holidays identified in 5 U.S.C. 6103(a), Saturdays, and Sundays) after the debt collector provides it**." 12 C.F.R. § 1006(b)(5).

87.     October 14, 2024, is the date Kendall Credit attempted to provide the "validation information" for purposes of compliance with 12 C.F.R. § 1006(b)(5) in the First 445 Collection Letter.

88.     Five days (excluding legal public holidays identified in 5 U.S.C. § 6103(a), Saturdays, and Sundays) after October 14, 2024, is October 21, 2024.

89.     Thirty (30) days after October 21, 2024, is November 20, 2024.

**90.**     In the First 445 Collection Letter, Kendall Credit represented "11/18/2024" as the "date that the debt collector will consider the end date of the validation period" pursuant to 12 C.F.R. § 1006.34(c)(3)(i). *See* First 445 Collection Letter (stating, "If you write us by 11/18/2024 we must stop collection on any amount you dispute until we send you information that shows you owe the debt.").

**91.** In the First 643 Collection Letter, Kendall Credit represented "11/18/2024" as the "date that the debt collector will consider the end date of the validation period" pursuant to 12 C.F.R. § 1006.34(c)(3)(ii). *See* First 445 Collection Letter (stating, "Write to ask for the name and address of the original creditor, if different from the current creditor. If you write by 11/18/2024, we must stop collection until we send you that information.").

**92.** In the First 643 Collection Letter, Kendall Credit represented "11/18/2024" as the "date that the debt collector will consider the end date of the validation period" pursuant to 12 C.F.R. § 1006.34(c)(3)(iii). *See* First 445 Collection Letter (stating, "Call or write us by 11/18/2024, to dispute all or part of this debt").

**93.** The end of the validation period represented in the First 445 Collection Letter, *i.e.*, October 18, 2024, is shorter than the minimum validation period required by 12 C.F.R. § 1006.34(b)(5), *i.e.,* October 21, 2024.

**94.** In the First 445 Collection Letter, Kendall Credit failed to properly provide the end of the validation period, shortening the length of the validation period, in violation of 12 C.F.R. §§ 1006.34(b)(5) and (c)(3).

95. On or about October 31, 2024, but no later than November 10, 2024, Baptist Health received the October Notice and knew that (1) Plaintiff disputed the debts; (2) Plaintiff demanded validation of the debts; (3) Plaintiff was represented by counsel with respect to the debts; (4) the contact information of Plaintiff's attorney; and (5) that all correspondence regarding the debts must be directed to Plaintiff's attorney.

96. Following receipt of the October Notice and as part of the agreement it (Baptist Health) entered into with Kendall Credit to collect, or attempt to collect, the debts from Plaintiff, Baptist Health disclosed the October Notice to Kendall Credit and, in so doing, notified Kendall

Credit that [1] Plaintiff disputed the debts; [2] Plaintiff was represented by an attorney with respect to the debts; and [3] provided Kendall Credit with information sufficient to allow Kendall Credit to readily ascertain the name of Plaintiff's attorney name and the address of Plaintiff's attorney.

97.     On November 25, 2024, Kendall Credit sent Plaintiff a collection letter in an attempt to collect $643.20 from Plaintiff for the services rendered on July 11, 2024, on behalf of Baptist Health. Attached as Exhibit G is a copy of this letter (the "Second 643 Collection Letter").

98.     Plaintiff received and reviewed the Second 643 Collection Letter.

99.     The Second 643 Collection Letter caused Plaintiff to waste at least eight (8) minutes, valued at approximately five dollars based on his employment rate of $40.00 an hour, and caused Plaintiff to become upset, as neither Kendall Credit nor Baptist Hospital was to contact Plaintiff directly, yet Plaintiff was now receiving a collection letter from Kendall Credit on behalf of Baptist Hospital.

100.    While frustrated and angered by the Second 643 Collection Letter, Plaintiff wasted at least fifteen (15) minutes, valued at approximately $10.00 based on his employment rate of $40.00 an hour, preparing and providing the Second 643 Collection Letter to his attorney.

101.    The Second 643 Collection Letter is a communication from Baptist Hospital, by and through Kendall Credit, to Plaintiff directly.

102.    The Second 643 Collection Letter does not disclose or otherwise state that Plaintiff disputes the 643 Debt.

103.    The Second 643 Collection Letter falsely represents the amount of the 643 Debt.

104.    On November 25, 2024, Kendall Credit sent Plaintiff a collection letter in an attempt to collect $445.80 from Plaintiff for the services rendered on July 20, 2024, on behalf of Baptist Health. Attached as Exhibit H is a copy of this letter (the "Second 445 Collection Letter").

105.    Plaintiff received and reviewed the Second 445 Collection Letter.

106.    The Second 445 Collection Letter caused Plaintiff to waste at least eight (8) minutes, valued at approximately five dollars based on his employment rate of $40.00 an hour, and caused Plaintiff to become upset, as neither Kendall Credit nor Baptist Hospital was to contact Plaintiff directly, yet Plaintiff was now receiving a collection letter from Kendall Credit on behalf of Baptist Hospital.

107.    While frustrated and angered by the Second 445 Collection Letter, Plaintiff spent at least fifteen (15) minutes, valued at approximately $10.00 based on his employment rate of $40.00 an hour, preparing and delivering the Second 445 Collection Letter to his attorney.

108.    The Second 445 Collection Letter is a communication from Baptist Hospital, by and through Kendall Credit, to Plaintiff directly.

109.    The Second 445 Collection Letter does not disclose or otherwise state that Plaintiff disputes the 445 Debt.

110.    The Second 445 Collection Letter falsely represents the amount of the 445 Debt.

111.    On December 5, 2024, written notice was sent to Kendall Credit information Kendall Credit that: (1) Plaintiff disputed the debts; (2) Plaintiff demanded validation of the debts; (3) Plaintiff was represented by counsel with respect to the debts; (4) provided the contact information of his attorney; and (5) that all correspondence regarding the debts must be directed to Plaintiff's attorney. Attached as Exhibit I is a copy of the notice (the "December Notice").

112.    The December Notice was sent to Kendall Credit by and through DocuPost, a third-party mailing vender,  of whom reported that the December Notice was delivered to Kendall Credit as addressed on or before December 31, 2024.

113.    Kendall Credit received the December Notice on or before December 31, 2024, and knew that (1) Plaintiff disputed the debts; (2) Plaintiff demanded validation of the debts; (3) Plaintiff was represented by counsel with respect to the debts; (4) the contact information of Plaintiff's attorney; and (5) that all correspondence regarding the debts must be directed to Plaintiff's attorney.

114.    On January 06, 2025, Kendall Credit sent Plaintiff a collection letter in an attempt to collect $445.80 from Plaintiff for the services rendered on July 20, 2024, on behalf of Baptist Health. Attached as Exhibit J is a copy of this letter (the "Third 445 Collection Letter").

115.    The Third 445 Collection Letter falsely represents the amount of the 445 Debt.

116.    The Third 445 Collection Letter is a communication from Baptist Hospital, by and through Kendall Credit, to Plaintiff directly.

117.    Plaintiff received and reviewed the Third 445 Collection Letter.

118.    The Third 445 Collection Letter caused Plaintiff to waste at least eight (8) minutes, valued at approximately five dollars based on his employment rate of $40.00 an hour, and caused Plaintiff to become upset, as neither Kendall Credit nor Baptist Hospital was to contact Plaintiff directly, especially after the December Notice, yet Plaintiff was now receiving another collection letter from Kendall Credit on behalf of Baptist Hospital.

119.    While frustrated and angered by the Second 445 Collection Letter, Plaintiff waste at least fifteen (15) minutes, valued at approximately $10.00 based on his employment rate of $40.00 an hour, preparing and providing the Third 445 Collection Letter to his attorney.

120.    On January 06, 2025, Kendall Credit sent Plaintiff a collection letter in an attempt to collect $643.20 from Plaintiff for the services rendered on July 11, 2024, on behalf of Baptist Health. Attached as Exhibit K is a copy of this letter (the "Third 643 Collection Letter").

121.    The Third 643 Collection Letter is a communication from Baptist Hospital, by and through Kendall Credit, to Plaintiff directly.

122.    The Third 643 Collection Letter falsely represents the amount of the 643 Debt.

123.    Plaintiff received and reviewed the Third 643 Collection Letter.

124.    The Third 643 Collection Letter caused Plaintiff to waste at least eight (8) minutes, valued at approximately five dollars based on his employment rate of $40.00 an hour, and caused Plaintiff to become upset, as neither Kendall Credit nor Baptist Hospital was to contact Plaintiff directly, especially after the December Notice, yet Plaintiff was now receiving another collection letter from Kendall Credit on behalf of Baptist Hospital.

125.    While frustrated and angered by the Third 643 Collection Letter, Plaintiff wasted at least fifteen (15) minutes, valued at approximately $10.00 based on his employment rate of $40.00 an hour, preparing and providing the Second 643 Collection Letter to his attorney.

126.    Plaintiff's stress, anxiety, and subsequent injuries were directly caused by Defendants' repeated communications, which Plaintiff perceived as harassing and unlawful due to their persistence despite his attorney's notices.

127.    Following receipt of the Third 445 Collection Letter and Third 643 Collection Letter, Plaintiff began struggling to sleep due to stress and anxiety, believing Kendall Credit was going to employ more invasive and aggressive collection methods – regardless of legally – given the langue used in the letters from Kendall Credit and Kendall Credit's complete disregard of the December Notice.

128.    Defendants' direct communications to Plaintiff, despite knowledge of his representation by counsel, constituted an intrusion upon Plaintiff's seclusion, a harm traditionally

recognized under common law, by intentionally invading his privacy and disrupting his peace of mind with unwanted and prohibited debt collection attempts.

129.    Plaintiff has lost more than (2) hours of sleep on at least seven (7) separate occasions due to the stress and anxiety caused by the Second 445 Collection Letter and Second 643 Collection Letter.

COUNT 1
**VIOLATION OF 15 U.S.C. 1692c(a)(2)**
(against Kendall Credit)

**130.**    Plaintiff incorporates by reference ¶¶ 7-39, 95-129 of this Amended Complaint.

**131.**    Pursuant to § 1692c(a)(2) of the FDCPA, "…a debt collector may not communicate with a consumer in connection with the collection of any debt … if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address." 15 U.S.C. § 1692c(a)(2).

**132.**    As stated above, Kendall Credit first learned Plaintiff was represented by an attorney when Baptist Health disclosed such information, as well as the name and address of Plaintiff's attorney, to Kendall Credit when Baptist Health hired Kendall Credit to collect the debts. Thus, before Kendall Credit even began sending letters to Plaintiff, it knew it could not attempt to collect the debts directly from Plaintiff. Kendall Credit was also notified directly, in writing, that Plaintiff was represented by and attorney with respect to the debts after Plaintiff received the first collection letters from Kendall Credit.

**133.**    As such, Kendall Credit violated § 1692c(a)(2) of the FDCPA in separate and independent ways: (1) Kendall Credit violated § 1692c(a)(2) when it communicated with Plaintiff directly, by and through the Second 643 Collection Letter, in an attempt to collect the 643 Debt; (2) Kendall Credit violated § 1692c(a)(2) when it communicated with Plaintiff directly, by and

through the Second 445 Collection Letter, in an attempt to collect the 445 Debt; (3) Kendall Credit violated § 1692c(a)(2) when it communicated with Plaintiff directly, by and through the Third 643 Collection Letter, in an attempt to collect the 643 Debt; (4) and Kendall Credit violated § 1692c(a)(2) when it communicated with Plaintiff directly, by and through the Third 643 Collection Letter, in an attempt to collect the 643 Debt.

134.     WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Kendall Credit, awarding Plaintiff the following relief: [1] statutory and actual damages as provided by 15 U.S.C. § 1692k; [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and [3] any other relief that this Court deems appropriate under the circumstances.

## COUNT 2
## VIOLATION OF 15 U.S.C. § 1692g(b)
(against Kendall Credit)

135.     Plaintiff incorporates by reference ¶¶ 7-94, 126-129  of this Amended Complaint.

136.     Pursuant to § 1692g(b) of the FDCPA, "[a]ny collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." *See* 15 U.S.C. § 1692g(b). As stated above, the First 445 Collection Letter and the First 643 Collection Letter were Kendall Credit's initial communication with Plaintiff in connection with the collection of the 445 Debt and 643 Debt, respectively. Because of this, Kendall Credit was required to provide certain "validation information" within the First 445 Collection Letter and the First 643 Collection Letter. The "validation information" that Kendall Credit was required to provide in the Collection Letter included, *among other things*, the "end date" of the validation period.

137.    The "end date" of the validation period is required to be a specific, minimum length of time – *i.e.*, thirty (30) days after the "validation information" is assumed to have been received by consumer, whereby the consumer is assumed to have received the "validation information" **at least five days** (*excluding legal public holidays identified in 5 U.S.C. 6103(a), Saturdays, and Sundays*) **after the debt collector** allegedly provided it. Thus, the shortest "end date" of the validation period available to Kendall Credit was November 20, 2024. In the First 445 Collection Letter and the First 643 Collection Letter, however, Kendall Credit unlawfully shorted the minimum validation period by identifying November 18, 2024, as the "end date" of the validation period.

138.    Thus, by unlawfully shorting the length of the validation period in the First 445 Collection Letter and the First 643 Collection Letter, Kendall Credit violated 12 C.F.R. §§ 1006.34(b)(5) and (c)(3) and, as such, violated 15 U.S.C. § 1692g(b) of the FDCPA because the unlawful shorting of the minimum validation period unlawfully overshadowed, and was otherwise inconsistent with, the consumer's right to dispute the underlying debt.

139.    WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Kendall Credit, awarding Plaintiff the following relief: [1] statutory and actual damages as provided by 15 U.S.C. § 1692k; [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and [3] any other relief that this Court deems appropriate under the circumstances.

**COUNT 3**
**VIOLATION OF 12 C.F.R. § 1006.34(c)(2)(iii) and 15 U.S.C. §§ 1692e, 1692f, and 1692g**
(against Kendall Credit)

140.    Plaintiff incorporates by reference ¶¶ 7-94, 126-129 of this Amended Complaint.

141.    Kendall Credit, as a debt collector, must provide a consumer with the validation information required by 15 C.F.R. § 1006.34(c).

**142.** Pursuant to § 1006.34, a debt collector *must* provide certain validation information, of which includes, but is not limited to: (1) "debt collector communication disclosure;" (2) "information about the debt;" (3) "information about consumer protections;" and (4) "consumer-response information." 15 C.F.R. § 1006.34(c).

**143.** Section 1006.34(c) requires "information about the debt" to be disclosed, provides an explicit list information, of which includes, but is not limited to, the amount of the debt on the itemization date. *See* 15 C.F.R. 1006.34(c)(2).

**144.** Section 1692e of the FDCPA prohibits, among other things, "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

**145.** Section 1692e(2)(A) of the FDCPA explicitly prohibits "[t]he false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2).

**146.** Section 1692f of the FDCPA prohibits, among other things, "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

**147.** Section 1692g of the FDCPA requires debt collectors to make certain disclosures, provide consumers with certain information, and to make such disclosures and provide such information within a specific timeframe. *See* 15 U.S.C. § 1692g(a)(1)-(5).

**148.** As set forth above, Kendall Credit was required to provide the amount of the 643 Debt and 445 Debt in the First 643 Collection Letter and First 445 Collection Letter, respectively, on one of five permissible itemization dates. Kendall Credit, however, failed to provide the amount of the 643 Debt in the in the First 643 Collection Letter on any permissible itemization date, as well as failed to provide the amount the 445 Debt in the in the First 445 Collection Letter on any permissible itemization date.

149.    Kendall Credit violated § 1692e of the FDCPA by failing to provide the amount of the debt it sought to collect from Plaintiff, pursuant to 15 C.F.R. 1006.34(c)(2)(vi)-(viii), in the First 445 Collection Letter and the First 643 Collection Letter.

150.    Kendall Credit violated § 1692f of the FDCPA by failing to provide the amount of the debt it sought to collect from Plaintiff, pursuant to 15 C.F.R. 1006.34(c)(2)(vi)-(viii), in the First 445 Collection Letter and the First 643 Collection Letter, as failing to do so constitutes unfair and/or otherwise unconscionable means to collect the 445 Debt and 643 Debt.

151.    Kendall Credit violated § 1692g of the FDCPA by failing to identify the amount of the 445 Debt and the 643 Debt, pursuant to 15 C.F.R. 1006.34(c)(2)(vi)-(viii), in the First 445 Collection Letter and First 643 Collection Letter, respectively, because Kendall Credit is required by 12 C.F.R. § 1006.34(c)(2) to make such an identification to lawfully attempt to collect the underlying debts from Plaintiff.

152.    As such, by failing to identify to identify the amount of the 445 Debt and the 643 Debt, pursuant to 15 C.F.R. 1006.34(c)(2)(vi)-(viii), in the First 445 Collection Letter and First 643 Collection Letter, Kendall Credit violated 15 C.F.R. § 1006.34(c), § 1692e of the FDCPA, § 1692f of the FDCPA, and § 1692g of the FDCPA.

153.    WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Kendall Credit, awarding Plaintiff the following relief: [1] statutory and actual damages as provided by 15 U.S.C. § 1692k; [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and [3] any other relief that this Court deems appropriate under the circumstances.

COUNT 4
**VIOLATION OF 15 U.S.C. 1692e(2)(A)**
(against Kendall Credit)

**154.**    Plaintiff incorporates by reference ¶¶ 7-41, 55-55, 81-83, 95-129 of this Amended Complaint.

**155.**    Section 1692e of the FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. The sixteen subsections of § 1692e set forth a non-exhaustive list of practices that fall within this ban, including, but not limited to: "*[t]he false representation of the character, amount, or legal status of any debt*." 15 U.S.C. § 1692e(2)(A). (emphasis added).

156.    As stated above, the debts Kendall Credit sought to collect from Plaintiff represented debts that had already been paid. To the extent any amount was owed by Plaintiff to Baptist Health in connection with the services rendered on July 11, 2024, or July 20, 2024, the amount which Plaintiff owes, if anything, does not equal the amounts demanded by Kendall Credit in the First 445 Collection Letter, the First 643 Collection Letter, the Second 445 Collection Letter, the Second 643 Letter, the Third 445 Collection Letter, or the Third 643 Collection Letter. Thus, by falsely representing the amount of the 445 Debt and the 643 Debt, Kendall Credit violated § 1692e(2)(A) of the FDCPA.

**157.**    WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Kendall Credit, awarding Plaintiff the following relief: [1] statutory and actual damages as provided by 15 U.S.C. § 1692k; [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and [3] any other relief that this Court deems appropriate under the circumstances.

### COUNT 5
### <u>VIOLATION OF 15 U.S.C. 1692e(8)</u>
(against Kendall Credit)

**158.** Plaintiff incorporates by reference ¶¶ ¶¶ 7-41, 55-55, 81-83, 95-129 of this Amended Complaint.

159.  Pursuant to § 1692e(8) of the FDCPA, debt collectors are prohibited from communicating with "any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8).

160.  Kendall Credit knew that Plaintiff disputed the debts because, in contracting with Kendall Credit to collect, or attempt to collect, the debts, Baptist Health informed Kendall Credit that Plaintiff disputed the debts. As mentioned above, however, the Second 445 Collection Letter, the Second 643 Collection Letter, the Third 445 Collection Letter, and the Third 643 Letter fail to disclose that Plaintiff disputed the debt Kendall Credit sought to collect. As such, Kendall Credit violated § 1692c(a)(2) of the FDCPA by failing to communicate and/or disclose in any of its written communications with Plaintiff that the subject debt was a disputed debt.

**161.** WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Kendall Credit, awarding Plaintiff the following relief: [1] statutory and actual damages as provided by 15 U.S.C. § 1692k; [2] costs and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k; and [3] any other relief that this Court deems appropriate under the circumstances.

### COUNT 6
### <u>VIOLATION OF FLA. STAT. § 559.72(18)</u>
(against Kendall Credit)

**162.** Plaintiff incorporates by reference ¶¶ ¶¶ 7-39, 95-129 of this Amended Complaint.

163.     Pursuant to section 559.72 of the FCCPA, no person shall: "[c]*ommunicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address….*" Fla. Stat. §559.72(18) (emphasis added).

164.     As stated above, Kendall Credit first learned Plaintiff was represented by an attorney when Baptist Health disclosed such information, as well as the name and address of Plaintiff's attorney, to Kendall Credit no later than November 10, 2024. Thus, before Kendall Credit sent the Second 445 Collection Letter and Second 643 Collection Letter, it knew it could not attempt to collect the debts directly from Plaintiff. Kendall Credit was also notified directly, in writing, that Plaintiff was represented by and attorney with respect to the debts after Plaintiff received the Second 445 Collection Letter and Second 643 Collection Letter from Kendall Credit.

165.     As such, Kendall Credit violated § 559.72(18) of the FCCPA in separate and independent ways: (1) Kendall Credit violated § 559.72(18) when it communicated with Plaintiff directly, by and through the Second 643 Collection Letter, in an attempt to collect the 643 Debt; (2) Kendall Credit violated § 559.72(18) when it communicated with Plaintiff directly, by and through the Second 445 Collection Letter, in an attempt to collect the 445 Debt; (3) Kendall Credit violated § 559.72(18) when it communicated with Plaintiff directly, by and through the Third 643 Collection Letter, in an attempt to collect the 643 Debt; (4) and Kendall Credit violated § 559.72(18) when it communicated with Plaintiff directly, by and through the Third 643 Collection Letter, in an attempt to collect the 643 Debt.

166.     WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Kendall Credit, awarding Plaintiff the following relief: **[1]** Statutory and actual damages as provided under Fla. Stat. § 559.77(2); **[2]** An injunction prohibiting Kendall Credit from

engaging in further collection activities directed at Plaintiff that are in violation of the FCCPA; **[3]** Costs and reasonable attorneys' fees pursuant to Fla. Stat. § 559.77(2); and **[4]** Any other relief that this Court deems appropriate under the circumstances.

COUNT 7
**VIOLATION OF FLA. STAT. § 559.72(18)**
(against Baptist Hospital)

**167.** Plaintiff incorporates by reference ¶¶ 7-41, 53-55, 68-69, 81-83, 95-129 of this Amended Complaint.

**168.** Pursuant to section 559.72 of the FCCPA, no person shall: "[c]*ommunicate with a debtor if the person knows that the debtor is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address….*" Fla. Stat. §559.72(18) (emphasis added).

**169.** As stated above, the collection letters Kendall Credit sent to Plaintiff were communications from Baptist Hospital because the collection letters were sent by Kendall Credit at the direction and/or orders of Baptist Hospital using information provided by Baptist Health for that specific purpose. Thus, by and through each the First 445 Collection Letter, the First 643 Collection Letter, the Second 445 Collection Letter, the Second 643 Letter, the Third 445 Collection Letter, or the Third 643 Letter, Baptist Health communicated with Plaintiff directly in an attempt to collect the respective debt.

**170.** As such, Batist Health violated § 559.72(18) of the FCCPA in separate and independent ways: (1) Batist Health violated § 559.72(18) when it communicated with Plaintiff directly, by and through the First 643 Collection Letter, in an attempt to collect the 643 Debt; (2) Batist Health violated § 559.72(18) when it communicated with Plaintiff directly, by and through the First 445 Collection Letter, in an attempt to collect the 445 Debt; (3) Batist Health violated §

Page **27** of **30**

559.72(18) when it communicated with Plaintiff directly, by and through the Second 643 Collection Letter, in an attempt to collect the 643 Debt; (4) Batist Health violated § 559.72(18) when it communicated with Plaintiff directly, by and through the Second 445 Collection Letter, in an attempt to collect the 445 Debt; (5) Batist Health violated § 559.72(18) when it communicated with Plaintiff directly, by and through the Third 643 Collection Letter, in an attempt to collect the 643 Debt; and (6) Batist Health violated § 559.72(18) when it communicated with Plaintiff directly, by and through the Third 445 Collection Letter, in an attempt to collect the 445 Debt.

171.     WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Baptist Hospital, awarding Plaintiff the following relief: **[1]** Statutory and actual damages as provided under Fla. Stat. § 559.77(2); **[2]** An injunction prohibiting Baptist Hospital from engaging in further collection activities directed at Plaintiff that are in violation of the FCCPA; **[3]** Costs and reasonable attorneys' fees pursuant to Fla. Stat. § 559.77(2); and **[4]** Any other relief that this Court deems appropriate under the circumstances.

## COUNT 8
## VIOLATION OF FLA. STAT. § 559.72(9)
(against Baptist Hospital)

172.     Plaintiff incorporates by reference ¶¶ 7-41, 53-55, 68-69, 81-83, 95-129 of this Amended Complaint.

173.     Pursuant to section 559.72 of the FCCPA, no person shall: "[c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

174.     As stated above, Baptist Hospital knew that it had been fully compensated for the medical services it rendered to Plaintiff on July 11, 2024, and July 20, 2024, by and through Plaintiff's insurance company; however, by and through 445 Bill, the Second 445 Bill, the 643

Bill, and each collection letter sent by Kendall Credit on its behalf, Baptist Hospital sought to collect additional amounts from Plaintiff that it (Baptist Health) knew it did not have any authority to collect. As such, Batist Health violated § 559.72(9) of the FCCPA by demanding funds from Plaintiff in the 445 Bill, the Second 445 Bill, the 643 Bill, and each collection letter sent Kendall Credit on its behalf.

175.    WHEREFORE, Plaintiff, respectfully, requests this Court to enter a judgment against Baptist Hospital, awarding Plaintiff the following relief: **[1]** Statutory and actual damages as provided under Fla. Stat. § 559.77(2); **[2]** An injunction prohibiting Baptist Hospital from engaging in further collection activities directed at Plaintiff that are in violation of the FCCPA; **[3]** Costs and reasonable attorneys' fees pursuant to Fla. Stat. § 559.77(2); and **[4]** Any other relief that this Court deems appropriate under the circumstances.

DATED: April 9, 2025

Respectfully Submitted,

 /s/ Thomas Patti
**THOMAS PATTI, ESQ.**
Florida Bar No. 118377
E-mail:     Tom@pzlg.legal
PATTI ZABALETA LAW GROUP
110 SE 6th Street Suite 1732
Fort Lauderdale, Florida 33309
Phone:     561-542-8550

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on April 9, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

 /s/ Thomas J. Patti
**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377
