UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:25-cv-20858-RAR

**HERIBERTO VALIENTE**,

    Plaintiff,

v.

**BAPTIST HEALTH SOUTH FLORIDA INC**
and **PALM BEACH CREDIT ADJUSTORS
INC d/b/a KENDALL CREDIT AND
BUSINESS SERVICE INC**,

    Defendants.
_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

    Plaintiff Heriberto Valiente ("Valiente" or "Plaintiff") submits this Response in Opposition to the Motion to Dismiss [Doc. 16] (the "Motion to Dismiss") filed by Defendants Baptist Health South Florida Inc ("Baptist") and Palm Beach Credit Adjustors Inc *doing business as* Kendall Credit and Business Service Inc ("PBCA") (collectively, the "Defendants") with respect to the First Amended Complaint [Doc. 13] (the "Amended Complaint").

## BACKGROUND

    1.    Plaintiff filed his initial Complaint in or about February of 2025. [Doc. 1].

    2.    In response the Defendants filed a motion to dismiss. [Doc. 12].

    3.    Contrary to the insinuation made by the Defendants in the Motion to Dismiss, Plaintiff was not required to respond to the original motion to dismiss, and as permitted by federal law, filed an amended complaint instead. *See e.g.,* Hervis v. Cty of Miami, 2012 U.S. Dist. LEXIS 111819 (S.D. Fla. Aug. 9, 2012) ("Plaintiff filed [an] Amended Complaint six days after Defendant filed its Motion to Dismiss. Therefore, Plaintiff's amendment must be allowed as a matter of course and does not require permission from the Court."); Lieu v. Sandy Sansing Cars, Inc., 2007 U.S. Dist. LEXIS 89421 (N.D. Fla. Dec. 5, 2007) ("Under Fed. R. Civ. P. 15(a) a plaintiff enjoys an absolute right to amend the complaint once at any time prior to a responsive pleading or the granting of a motion to dismiss.").

4. The Amended Complaint, Plaintiff sues PBCA for violations of 15 U.S.C. § 1692c(a)(2) [Count I]; 15 U.S.C. § 1692g(b) [Count II]; 12 CFR § 1006.34(c)(2)(iii); 15 U.S.C. §§ 1692e, f, and g [Count III]; 15 U.S.C. 1692e(2)(A) [Count IV]; 15 U.S.C. § 1692e(8) [Count V]; Fla. Stat. § 559.72(18) [Count VI] and sues Baptist for violations of Fla. Stat. § 559.72(18) [Count VII]; and Fla. Stat. § 559.72(9) [Count VIII]. [Doc. 13].

5. In response to the Amended Complaint, the Defendants filed the Motion to Dismiss.

**THE MOTION TO DISMISS & SUMMARY OF THE OPPOSITION**

6. In the Motion to Dismiss, the Defendants make various arguments in support of dismissal of the Amended Complaint. First, the Defendants argue that Plaintiff lacks Article III standing. More specifically, the Defendants allege that the first element of a "concrete injury" is lacking. The Defendants do not specify whether the 12(b)(1) argument is a fact, or facial challenge to the Court's jurisdiction, but their Motion to Dismiss does not attach any documents relevant to the issue of standing, and so Plaintiff's presume that the argument is a facial challenge.

7. While the Defendants categorize Plaintiff's losses in an attempt to establish lack of injury fact, their position overlooks well-settled decisional law when these losses finding that the precise loss alleged in the Amended Complaint is legally sufficient under Article III.

8. Second, the Defendants allege that the Amended Complaint fails to state a claim for relief under Rule 12(b)(6), Federal Rules of Civil Procedure.

9. As to **Count I**, the Defendants allege that because Plaintiff failed to attach a "tracking history" of its "dispute notices" the Amended Complaint does not state a claim for relief. The Defendants also attach a tracking history, and ask this Court to consider the tracking history provided in granting their motion to dismiss Count I. The Defendants' argument relies on extraneous documents, which this Court is not permitted to rely upon in granting the Motion to Dismiss. Likewise, the crux of the Defendants' argument is a *factual one*, which is not properly resolved on a motion to dismiss.

10. As to **Count II**, the meat of PBCA's argument is that it correctly calculated the "end date" for the verification period, and/or regardless, this Court is not bound to abide by the provisions in 12 C.F.R. § 1006.34, in calculating that date, in any event after the Supreme Court's decision in Loper Bright. Factually, the attachments to the Amended Complaint make clear that PBCA incorrectly calculated the end date, because it included a Saturday and Sunday in the five-day period, which is not permissible under the plain terms of 12 C.F.R. § 1006.34. This resulted in

an improper end date of November 18th, rather than November 20th. Furthermore, *Loper Bright* provides that when Congress has expressly delegated decision making authority to an agency, the Court must first determine whether the agency has acted within the delegated scope of such authority. If it has, the agency determination is binding, if reasonable. As applied, Congress expressly delegated authority to an agency, and that agency acted within the scope of such authority in enacting Regulation F. Such directive must be applied, accordingly, by the court.

11. As to **Count III**, PBCA alleges that it did (in fact) provide the "amount of debt" due in its notices to the Plaintiff. However, a plain review of Doc. 13-5 and Doc. 13-6 makes clear that PBCA failed to use a permissible "itemization date" as that term is defined in 12 C.F.R. § 1006.34. For this reason, the claim in Count III states a plausible claim for relief.

12. As to **Count IV** and **VIII**, Defendants merely disagree – factually – with the Amended Complaint. In that regard, they claim that the "amount of the debt" was correctly stated. This is contrary to the allegations made by Plaintiff in the Amended Complaint and is a factual dispute which cannot be resolved under Rule 12(b)(6).

13. As to **Count V**, the Defendants claim that because they did not disclose "credit information" to a "credit bureau". However, this argument overlooks the broad definition of "communication" under the FDCPA and the plain language prohibiting disclosure to "any person". There is simply no requirement that the "disclosure" be to a credit agency, although this is perhaps most commonly the basis for claims under § 1629e(8).

14. With respect to **Count VII**, Baptist claims that there are insufficient allegations to support an agency relationship between Baptist and PBCA and as such, Count VII must be dismissed. However, even a cursory review of the Amended Complaint shows that a plausible claim for either express or implied agency (under a theory of apparent authority) can be reasonably inferred.

15. For these reasons, each of the grounds set forth by the Defendants in support of the Motion to Dismiss lack merit, and the Motion to Dismiss is due to be denied in its entirety.

## LEGAL ARGUMENT

**1. PLAINTIFF HAS ALLEGED SUFFICIENT INJURY IN FACT TO ESTABLISH STANDING**

16. "A party can challenge the Court's subject matter jurisdiction either facially or factually." *See* Island IP Acquisitions, LLC v. Antle, 2023 U.S. Dist. LEXIS 200577 (S.D. Fla.

Nov. 8, 2023). "Facial attacks challenge subject matter jurisdiction based on the allegations in the complaint, and the district court takes the allegations as true in deciding whether to grant the motion." Id. "Factual attacks challenge subject matter jurisdiction in fact, irrespective of the pleadings." Id. "When resolving a factual challenge to subject matter jurisdiction, the court may consider extrinsic evidence such as testimony and affidavits." See SisterSong Women of Color Reproductive Justice Collective v. Kemp, 2019 U.S. Dist. LEXIS 194134 (N.D. Ga. Oct. 24, 2019). As noted above, the Defendants motion is unclear as to whether it asserts a "facial" or "factual" challenge, but under the circumstances, Plaintiff presumes that the challenge is a "facial" one, based only on the allegations set forth in the pleading.

17. It is true that a "case is not a 'case' (or a controversy) if the plaintiff lacks standing [and this Court] can't hear matters that aren't 'Cases' or 'Controversies' [because under] Article III of the Constitution, [the Court] lack[s] jurisdiction over them." See Drazen v. Pinto, 74 F. 4th 1336, 1339 (11th Cir. 2023). "To establish standing, a plaintiff must show that she has suffered an injury in fact, which the defendant likely caused and which a favorable decision can likely redress." Id. The "injury in fact" requirement, demands that the "plaintiff's injury be concrete." Id. There are "obvious" harms, such as "physical injury and financial loss" however, "intangible harms – an invasion of privacy, for example – may also satisfy the concreteness requirement." See Pinto, 74 F. 4th at 1339.

18. To prove Article III standing, a plaintiff must satisfy three requirements (1) "injury in fact" that is "concrete, particularized, and actual or imminent" and (2) "the defendant likely caused the injury" and (3) "that a favorable judicial decision can likely redress [the] injury." Pinto, 74 F. 4th at 1342. In considering the first element, "intangible harms" can satisfy the "injury in fact" element of standing. Id. "Congress is well positioned to identify those intangible harms [and so] when Congress identifies an intangible harm by enacting a law with a cause of action to redress that harm, [the court] find[s] its judgment instructive and important." Id.

19. So long as the intangible harm identified by Congress, "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts" it satisfies the concreteness requirement of Article III's first element. Pinto, 74

F. 4th at 1343. The harm identified by Congress in consumer protection statutes <u>is</u> closely related and shares a "close relationship" to the common law tort of intrusion upon seclusion.[1] <u>Id.</u> As such:

> [The] harm associated with an unwarranted [written correspondence] shares a close relationship with the harm underlying the tort of intrusion upon seclusion. Both harms represent an intrusion into the peace and quiet in a realm that is private and personal. For that reason, the harms are similar in kind and the receipt of an unwanted [] message causes a concrete injury.

<u>Pinto</u>, 74 F. 4th at 1345. In <u>Pinto</u>, the Eleventh Circuit expressly held that, "[a] plaintiff who receives an unwanted, illegal [communication] suffers a concrete injury." <u>Pinto</u>, 74 F. 4th at 1339.

20. The Eleventh Circuit has also specifically identified: (1) waste of time disputing a debt; (2) negative effects on credit; (3) money spent on faxing document; and (4) "[feeling] anxious, exploited, embarrassed, and worthless" as "concrete" harms, that satisfy Article III standing. <i>See</i> <u>Walters v. Fast AC, LLC</u>, 60 F. 4th 642, 648 (11th Cir. 2023). In short, the <u>Walters</u> Court stated, "We have held that [concrete injury in fact] include[s] not only straightforward economic injuries, like lost money, but also 'more nebulous' ones, like wasted time, missed credit opportunities and emotional distress." <u>Id.</u>

21. In <u>Rivera v. Dove Invest. Corp.</u>, the District Court specifically addressed whether "emotional harm" under the FDCPA constitutes "actual injury" and confers Article III standing. 2020 U.S. Dist. LEXIS 197178 (S.D. Fla. Oct. 23, 2020). The Court first emphasized that the FDCPA is a "consumer protection statute" that is entitled to "eliminate" abusive practices by debt collectors; ensure that those who use them have no competitive advantage; and then creates a "private right of action" against debt collectors who violate the Act. <u>Id.</u> at *5. The Court found that because the Eleventh Circuit had specifically found "actual damages under the FDCPA [to] include damages for emotional distress," the plaintiff's claimed injuries of "mental anguish and emotional distress" were sufficient to establish Article III standing. <u>Id.</u> at *7-8.

22. Numerous other Courts of this District, and the Eleventh Circuit have considered whether emotional, or otherwise intangible harms are sufficient to establish standing in the context of the FDCPA and/or broader consumer protection statutes and have answered this question in the

---

[1] This common law tort consists of (a) "intentional intrusion"; (b) "into another's solitude or seclusion" and (c) "which would be highly offensive to a reasonable person." <i>See</i> <u>Pinto</u>, 74 F. 4th at 1345.

affirmative. *See e.g.,* Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Aventura, P.A., No. 21-14348, 2022 U.S. App. LEXIS 25076 (11th Cir. Sept. 7, 2022) ("[the Plaintiff's] wasted time and emotional distress manifesting in loss of sleep can be sufficiently concrete to confer Article III standing."); (discussing Article III standing in the context of a consumer protection statute and finding that "very nearly any level of direct injury is sufficient to show a concrete harm."); Cruz v. Selene Fin., L.P., 2024 U.S. Dist. LEXIS 239142 (S.D. Fla. Nov. 20, 2024) (finding the threshold to establish "injury in fact" under Article III to be a low bar and stating that "in broad strokes" courts have found standing in consumer protection matters where there is (1) emotional injury plus a corresponding tangible injury (2) the risk of future harm, paired with emotional injury).

23. These precedents make clear that Plaintiff has undoubtedly alleged and can establish standing, in the Amended Complaint. Plaintiff alleges that he wasted time responding to the collection notices [Doc. 13 ¶¶ 99-100, 106, 118-19, 124-25]. Plaintiff *also* alleges that he suffered emotional distress including "anxiety" and "stress" as a "direct result" of the Defendants' repeated communications. [Doc. 13 ¶¶ 126-27, 129]. What is more, Plaintiff alleges that he lost "more than (2) hours of sleep on at least seven (7) separate occasions due to the stress and anxiety" of the collection efforts. [Doc. 13 ¶¶ 127, 129].

24. Furthermore, the decisional authority cited by the Defendants is intentionally categorized, and discusses cases in which a plaintiff alleged only a single harm, rather than the comprehensive allegations in this case. Defendants cite for example to Preisler v. Eastpoint Recovery Grp., 2021 U.S. Dist. LEXIS 98515 (S.D. Fla. May 25, 2021). In Preisler, however, the District Court noted that "intangible injuries sometimes qualify as concrete" when they have a "close relationship to the harm that has traditionally been regarded as providing a basis for a lawsuit"; and the judgment of congress. Id. at *9-10.

25. Furthermore, the Preisler Court ultimately concluded that "confusion alone" is not a concrete injury to support a claim under the FDCPA. Id. at *11-12. Similarly, in Luce v. LVNV Funding, LLC, the District Court discussed whether "emotional distress alone is sufficiently concrete injury for standing purposes." 2023 U.S. Dist. LEXIS 8636 (S.D. Fla. Jan. 18, 2023). The Luce court also recognized that "in the FDCPA context, courts in the Southern District of Florida are split on whether emotional harms arising from alleged violations of FDCPA establish standing." Id. at *10.

26. While ultimately following the Preisler line of cases, to find that emotional distress alone cannot support Article III standing, the Luce court also recognized that even under the Preisler line of decisions, "[a] plaintiff cannot rely only on feelings of distress, confusion, or anxiety." Luce, 2023 U.S. Dist. LEXIS 8636 at *13-14. *See also* Carlisi v. Sprintcom, Inc., 2006 U.S. Dist. LEXIS 113325 (S.D. Fla. Sept. 1, 2006) ("Courts have recognized the long-standing rule that a suit brought under federal law cannot be maintained seeking damages for mental anguish and emotional damages alone."); By breaking the purported damages into *categories*,[2] the Defendants implicitly recognize that the Plaintiff has sufficiently alleged numerous injuries which in combination clearly meet the Article III standing requisites. Stated differently, while only an allegation of "emotional stress" may not be sufficient to support Article III standing, under the authority cited, the Plaintiff has not alleged "emotional distress alone" and for this reason the decisions cited are distinguishable to the point of inapplicability.

27. The Defendants also cite Heres v. Medicredit, Inc., in support of their position that dismissal is proper here. 2024 U.S. Dist. LEXIS 117222 (S.D. Fla. Jul. 2, 2024). However, a careful reading of Heres makes clear that it weighs against dismissal. As an initial matter, the Heres Court correctly analyzed the Eleventh Circuit precedent in Walters, and Toste Beach Club at Fontainebleau Park Condo. Ass'n, Aventura, P.A., No. 21-14348, 2022 U.S. App. LEXIS 25076 (11th Cir. 2022) to conclude that: "wasted time, wasted money, and emotional distress in the form of anxiety and lost sleep are all concrete injuries." Heres, 2024 U.S. Dist. LEXIS 117222 at *15.

28. However, the court found that the plaintiff in Heres allegations of these harms were only conclusory because the complaint "lack[ed] allegations describing the amount of time and money spent or how that time and money was spent." Heres, 2024 U.S. Dist. LEXIS 117222 at *16. Furthermore, the court found that where a complaint "provide[s] *specific* allegations or evidence regarding time spent, money wasted, or associated feelings of emotional distress" supported by factual details they are sufficient under the binding precedent of the Eleventh Circuit. Id. at *16-17 (emphasis original).

---

[2] The Defendants recognize that the Amended Complaint alleges various injuries stemming from their collection efforts including: (a) confusion, frustration, and anger; (b) future injury; (c) time and money; (d) loss of sleep; and (e) intrusion upon seclusion. [Doc. 16 at 8-10].

29. As emphasized above, the Plaintiff in this case has indicated *exactly* how many minutes he spent,[3] and *exactly* how he calculated his damages based on that wasted time. Furthermore, he pinpointed *exactly* what feelings of "emotional distress" he experienced, when he experienced them, and the physical manifestation of symptoms which his specific anxiety and stress caused. The decision in Heres makes clear that these *specific* allegations *are sufficient* to carry a "concrete injury" for Article III standing.

**2.     THE DEFENDANTS' ARGUMENTS UNDER RULE 12(b)(6) EACH FAIL**

30. "A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint." *See* Wood v. Fla. Atl. Univ. Bd. of Trs., 2009 U.S. Dist. LEXIS 134791 (S.D. Fla. Jan. 5, 2009). "To survive a motion to dismiss, the plaintiff must state enough facts to state a claim to relief that is plausible on its face." Id. "A claim is plausible on its face when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See* Gov. Emples. Insur. Co. v. Merced, 2021 U.S. Dist. LEXIS 110697 (M.D. Fla. Jun. 14, 2021). "When considering the motion, the court accepts all factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff." Id.

31. Ultimately, federal courts uniformly hold that "Rule 8(a) sets a very low threshold for determining the sufficiency of facts" in support of a claim and requires "only a short and plan statement of the claim that the pleader is entitled to relief." *See* Morgan Beaumont, Inc. v. First Nat'l Bank of Cent. Tex, 2005 U.S. Dist. LEXIS 23123 (M.D. Fla. Jul. 11, 2005) (emphasis added); Upofloor Ams., Inc. v. S Squared Sustainable Surfaces, LLC, 2016 U.S. Dist. LEXIS 140952 (M.D. Fla. Oct. 12, 2016) ("The plaintiff need not, however, plead detailed and particular facts to support a claim . . . Rule 8 sets a very low threshold for determining the sufficiency of facts in the statement of claim . . . This standard requires the plaintiff to plead just enough to give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.").

**2.1    COUNT I – VIOLATION OF 15 U.S.C. § 1629c(a)(2)[4]**

32. The conduct prohibited by 15 U.S.C. § 1629c(a)(2) is straight forward: a debt collector cannot "communicate" with a consumer if "the debt collector knows the consumer is

---

[3] Plaintiff alleges that he spent "eight minutes" which under Heres is more than enough time to support a "concrete injury." *See* Heres, 2024 U.S. Dist. LEXIS 117222 at *18-19 ("There is no question that wasted time is a concrete harm, and Eleventh Circuit precedent 'strongly suggests' the amount of time wasted can be little more than a few seconds.").

[4] To the extent that Baptist has challenged Count VI, the same arguments apply.

represented by an attorney with respect to such debt." *See* 15 U.S.C. § 1629c(a)(2). PBCA alleges that the Amended Complaint fails to state a claim because of USPS Tracking History attachments indicating that on "November 8, 2024" the representation letter had not yet been delivered and was "arriving late".

33. To begin with, Plaintiff urges this Court to refrain from considering these attachments and moves to strike them. It is well-settled that a court is generally limited to consideration of the four corners of the complaint, and its attachments, in determining the efficacy of a motion to dismiss. *See e.g.,* <u>Cty of Miami Citigroup, Inc.</u>, 801 F. 3d 1268 (11th Cir. 2015) ("A court's review on a motion to dismiss is limited to the four corners of the complaint."). Likewise, if a court considers matters outside the four corners of the complaint it must convert the motion to dismiss into one for summary judgment. *See* <u>Russo v. Fifth Third Bank</u>, 634 Fed. Appx. 774 (11th Cir. 2015). If the court intends to convert a motion, it must give notice and an opportunity for "mutual discovery" prior to ruling on the motion to dismiss. *See* <u>Joyce v. Secretary Dept. of Navy</u>, 736 Fed. Appx. 861 (11th Cir. 2018).

34. The only exception to this rule applies when the document(s) at issue are (a) central to the plaintiff's claim; and (b) are undisputed. <u>Russo</u>, 634 Fed. Appx. at 776. Notably, the Defendants cite this rule in footnote three of the Motion to Dismiss but fail to apply it to their attachments. The Defendants also ask the court to take "judicial notice" of the attachments. <u>Id.</u> In support of this request the Defendants cite to a decision of the District Court sitting in Central California, which states in a single footnote "[the] Court grants [the defendant's] <u>unopposed request</u> for judicial notice of the USPS tracking results and tracking history." <u>Jackson v. First Nat'l Bank of Omaha</u>, 2022 U.S. Dist. LEXIS 26007, n.2 (C.D. Cal. Jan. 18, 2022).

35. Here, neither theory permits this Court to consider the USPS tracking history without converting the motion to dismiss into one for summary judgment. As to the first theory, the tracking history is not "central" to the plaintiff's claims. As to judicial notice, such is proper only where the "facts are not subject to reasonable dispute," however, the unverified, wholly unauthenticated "print out" does not meet this standard. For this reason, the Court must disregard the tracking print outs, take the allegations of the Complaint as <u>true</u>, and deny the Motion to Dismiss.

36. Alternatively, and assuming the court can consider the attachments: they do not conclusively refute the claim because they do not show when the mail was <u>received</u> by PBCA. In

the Amended Complaint, Plaintiff alleges that "[PBCA] first learned Plaintiff was represented by an attorney when Baptist Health disclosed such information, as well as the name and address of Plaintiff's attorney to [PBCA] when Baptist Health hired [PBCA] to collect the debts." [Doc. 13 ¶ 132]. Plaintiff likewise alleges that this occurred "no later than November 10, 2024". [Doc. 13 ¶ 164]. These allegations alone must be taken as true and state a claim for relief *regardless* of when the representation letter was sent, how long it was delayed, or what any tracking history states.

37. Likewise, the USPS tracking form indicates that the representation letter was mailed on or about October 9, 2024, and on November 8, 2024, was "in transit to next facility, arriving late" but located in Miami, Florida. [Doc. 16-1]. The next communication by PBCA was made on November 25, 2024, when PBCA sent a collection letter to Plaintiff. [Doc. 13 ¶ 97]. On a motion to dismiss, this Court must draw all reasonable inferences in Plaintiff's favor. Surely it can be *reasonably inferred* that although "arriving late" as of November 8th, the letter was received by November 25th, some nearly twenty (20) days later, and nearly two months after it was placed in the mail.

38. For these reasons, regardless of whether the Court considers the Exhibits attached to the Motion to Dismiss, the allegations supporting dismissal of Count I merely take issue with the factual allegations, and such allegations are not properly vindicated on a motion to dismiss. *See e.g.,* Drummond v. Proctor, 669 F. Supp. 3d 3120 (S.D. Ga. 2023) ("Motions to dismiss . . . test the legal sufficiency of the factual allegations in the complaint.").'

**2.2   COUNT II – VIOLATION OF 15 U.S.C. § 1692g(b)**

39. PBCA's position with respect to Count II misconstrues the allegations set forth therein. Section 1629g(b) expressly provides that "[any] collection activities and communications during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." *See* 15 U.S.C. § 1629g(b). Plaintiff contends that the miscalculation of the validation period, in itself, constitutes an action that is "inconsistent with" or "overshadows" the consumer's right to dispute the debt.

40. The Defendants make several arguments in support of their Motion to Dismiss, but the only *relevant* arguments pertain to the calculation of the end date, for the validation period.

41. First, the Defendants next allege that they correctly calculated the date. [Doc. 16, pp. 13-14]. In that respect, they allege that the thirtieth day from October 14th (beginning the next

day) is Monday November 18th; this is the date indicated by PBCA in their communication. [Doc. 13-5; 13-6]. However, the Defendants err in their conclusion, because in calculating the additional five (5) day period, PBCA <u>included</u> weekends, to come up with a November 18th "end date" for the validation period.

> 42. 12 CFR § 1006.34(b)(5) expressly provides as follows:
>
> Validation period means the period starting on the date that a debtor collector provides the validation information required by paragraph (c) of this section and ending 30 days after the consumer receives or is assumed to receive the validation information. For purposes of determining the end of the validation period the debt collector may assume that a consumer receives the validation information on any date that is <u>at least five days</u> (<u>excluding</u> legal public holidays identified in 5 U.S.C. § 6103(a), <u>Saturdays and Sundays</u>) after the debt collector provides it.

*See* 12 C.F.R. § 1006.34(b)(5) (emphasis added). Under this provision, the Saturday and Sunday (November 16th and November 17th) should have been <u>excluded</u> from the five-day period. Excluding those dates, the correct end date for the validation period is in fact November 20th, which is what the Plaintiff alleges in the Amended Complaint. [Doc. 13 ¶ 137]. So, contrary to the Defendants' position, they incorrectly calculated the period by including weekends.[5]

43. In a last-ditch effort to invalidate Count II, the Defendants allege that the Supreme Court's recent decision in <u>Loper Bright Enterprises v. Raimondo</u>, relives this court of deference to the Code of Federal Regulations, in construing 15 U.S.C. § 1629g. 603 U.S. 369 (2024). This, however, is not the holding of <u>Loper Bright. In Loper Bright</u>, the Supreme Court did in fact overrule the so-called <u>Chevron</u> doctrine, which employed a two-step framework to interpret statutes administered by federal agencies. <u>Loper Bright</u>, 603 U.S. at 379. Under this framework, courts were directed to first ask whether a statute is ambiguous, and if so, the court was required to "defer" to an "agency's interpretation [of the ambiguous statute] if it is based on a permissible

---

[5] It should also be noted that even PCBA <u>clearly believed</u> that it was required to <u>include</u> an <u>additional</u> five-day period in calculating the end date for the validation period. This is shown by the fact that they did not use a mere thirty (30) day window in calculating the end date for the validation period. Instead, they attempted to utilize a 35 day period but improperly included the Saturday and Sunday in that five day period, which resulted in a 33 day window (rather than the attempted 35). Their position that only a thirty (30) day period was necessary, asserted after the fact, is perhaps disingenuous accordingly.

construction of the statute." Id. (citing Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 (1984).

44. In considering the propriety of this test, the Court noted that it stands in direct conflict with the APA, which was enacted as a "check upon administrators whose zeal might otherwise have carried them to excesses not contemplated in legislation creating their offices." Loper Bright, 603 U.S. at 391. The APA "codifies [] for agency cases the unremarkable, yet elemental proposition reflected by judicial practice dating back to Marbury: that courts decide legal questions by applying their own judgment." Id. at 392. To fulfill this directive the Courts are now not directed toward a determination of the ambiguity or clarify of a particular statute – in determining whether to 'defer' to an agency interpretation. Id. at 393.

45. Instead, Loper Bright directs that district courts must now, first determine whether congress has "expressly delegated to an agency the authority to give meaning to a particular statutory term" or "empower an agency to prescribe rules to 'fill up the details of a statutory scheme'" or to "regulate subject to the limits imposed by a term or phrase" as "appropriate" or "reasonable". Loper Bright, 603 U.S. at 394-95. When a statute has "delegate[d] discretionary authority to an agency" as indicated above, the court is required to "respect the delegation" and must enforce the interpretation of the agency unless the agency has exceeded the "delegation" conferred by congress. Id. at 413. If there is no delegation of authority to the agency by Congress, the court should exercise its independent judgment but of course may consider and give "due respect to" the agency's interpretation to the extent the court finds it to be reasoned. Id. at 386 (noting that since the inception of American jurisprudence, courts have given "the most respectful consideration to Executive Branch interpretations.").

46. As applied here, Congress has expressly delegated authority to the Bureau of Consumer Financial Protection" (the "BCFP"). See 12 U.S.C. § 5491(a). The authority delegated by Congress to the BCFP is exceedingly broad and indicates that the BCFP "shall regulate the offering and provision of consumer financial products or services under the Federal consumer financial laws." Id. Section 1006.1 specifically states that it is "issued by the Bureau of Consumer Financial Protection" and "carries out the purposes of the FDCPA." See 12 C.F.R. § 1006.1(a)-(b). The provision at issue, § 1006.34 is well within the authority delegated to the BCFP, and merely provides guidance on the administration of "consumer protection laws" more specifically, 15 U.S.C. § 1692g. The only relevance of Loper Bright is that instead of blindly deferring to the

BCFP's provisions in Regulation F, this Court must instead determine whether Regulation F and specifically § 1006.34, is enacted within the scope of authority that has been delegated to the BCFP. There is no question that it is within such scope, which broadly authorizes the BCFP to administer consumer protection laws.

47. Ultimately, the Amended Complaint alleges that PBCA violated 15 U.S.C. § 1629g(b) because it miscalculated the end date of the verification period, which as a matter of law "overshadows" or is "inconsistent" with the debtor's right to dispute the debt. The date was in fact miscalculated because PBCA improperly <u>included</u> Saturday and Sunday, when calculating the additional five (5) days required under § 1006.34(b)(5). This federal code regulation is in fact "binding" even after <u>Loper Bright</u> because the BCFP was expressly delegated broad authority to administer the consumer protection laws, and § 1006.34(b)(5) does just that, and is within the scope of delegated authority.

## 2.3  COUNT III – VIOLATIONS OF 12 C.F.R. § 1006.34(c)(2)(iii), 15 U.S.C. §§ 1692e, f, and g

48. As to Count III, PBCA alleges that the face of the notices at issue show that it <u>did</u> include the "amount of the debt on the itemization date". [Doc. 16, pp. 15-16]. However, a review of the attachments to Plaintiff's Amended Complaint, and the Amended Complaint itself shows that the "amount of the debt sought to collect", as of a permissible "itemization date" is simply not included in the First 445 Collection Letter, or the First 643 Collection Letter. [Doc. 13-5; 13-6].

49. Pursuant to § 1006.34, "itemization date" means "any one of the following five reference dates for which a debtor collector can ascertain the amount of the debt": (i) "the last statement date, which is the date of the last periodic statement or written account statement or invoice provided to the consumer by a creditor"; (ii) "the charge-off date, which is the date the debt was charged off"; (iii) the "last payment date, which is the date the last payment was applied to the debt"; (iv) "the transaction date, which is the date the last payment was applied to the debt"; or (v) "the judgment date, which is the date of a final court judgment that determines the amount of the debt owed by the consumer." *See* 12 C.F.R. § 1006.34(c)(3).

50. The "amount due" is determined "as of October 6, 2024" [Doc. 13-5] and "October 2, 2024" [Doc. 13-6] respectively. As indicated in the Amended Complaint "October 6, 2024, is not the date of the last period statement or written account statement or invoice provided Plaintiff by Baptist []" [Doc. 13 ¶ 47]; and is "not the charge-off date" [Doc. 13 ¶ 48]; and is "not the date

the last payment was applied" [Doc. 13 ¶ 49]; likewise, "no final court judgment exists" [Doc. 13 ¶ 50]. Furthermore, as to the 445 Collection Letter, "October 2, 2024, is not the date of the last period statement or written account statement or invoice provided Plaintiff by Baptist []" [Doc. 13 ¶ 75]; and is "not the charge-off date" [Doc. 13 ¶ 76]; and is "not the date the last payment was applied" [Doc. 13 ¶ 77]; and there is "no final court judgment" as to the debt [Doc. 13 ¶ 78].

51. The face of the Amended Complaint and its attachments makes clear that while a total debt was provided by PBCA, it did not utilize a permissible itemization date and for this reason *plausibly* violates 15 U.S.C. § 1692e, f, and g.

2.4   **COUNT IV & VIII – VIOLATION OF 15 U.S.C. § 1692e(2)(A) & Fla. Stat. § 559.72(8)**

52. The Defendants position as to Count IV, and VIII is unavailing, because it makes a factual challenge, rather than attacking the *sufficiency* of the legal allegations. "Section 1692e provides that a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt and provides a non-exclusive list of conduct that constitutes a violation of the section." See Kelemen v. Professional Collection Sys., 2011 U.S. Dist. LEXIS 2105 (11 (M.D. Fla. Jan. 2, 2011). Subsection (2)(A) of the same provision includes "the false representation of the character, amount, or legal status of any debt." See 15 U.S.C. § 1692e(2)(A). In the Amended Complaint, Plaintiff alleges that the Defendants violated this provision because they "sought to collect from Plaintiff [] debts that had already been paid." [Doc. 13 ¶ 156]. In the Motion to Dismiss, the Defendants make a purely *factual* challenge to this assertion, alleging that they sought to collect the correct amount due and owing. Without question, this is a factual determination which seeks to challenge the facts rather than the legal sufficiency of the pleading.

2.5   **COUNT V – VIOLATION OF 15 U.S.C. § 1692e(8)**

53. Next, PBCA seeks to dismiss Count V of the Amended Complaint. In essence, PBCA claims that because it never "reported" the debt to a credit agency, Plaintiff cannot prevail under subsection (8) of § 1692e. "15 U.S.C. § 1692e provides that a debt collector may not use any false, deceptive, or misleading representations or means in connection with the collection of any debt." See Funderburke v. Amerassist A/R Sols., Inc., 2024 U.S. Dist. LEXIS 124935 *13 (N.D. Ga. Jun. 14, 2024). "Section 1692e(8) provides that the following is a violation of § 1692e: 'Communicating or threatening to communicate <u>to any person</u> credit information which is known,

or which should be known to be false, including the failure to communicate that a disputed debt is disputed." Id.

54. It is true that a vast amount of authority discussing violations of § 1692e(8) concerns a credit reporting agency, as the "any person" described in § 1692e(8). However, the language of the statute does not state "communicating or threatening to communicate *to a credit reporting agency*." See 15 U.S.C. § 1692e(8). Instead, it prohibits communicating to "any person". Likewise, the term "communicate" is broadly defined by the FDCPA, as "the conveying of information regarding a debt directly or indirectly to any person through any medium." See Black v. Asset Acceptance, LLC, 2006 U.S. LEXIS 110371 *15 (N.D. Ga. May 19, 2006) (*citing* 15 U.S.C. § 1692a(2)). Plaintiff submits that the allegations in the Amended Complaint are sufficient to establish that PBCA "communicated" to "any person" that a "disputed debt is disputed" in and through the Second 445 Collection Letter, and Third 445 Collection Letter as well as the Second 643 Collection letter, and the Third 643 Collection Letter. [Doc. 13 ¶¶ 159-61]. Plaintiff alleges that PBCA knew the debt at issue was disputed, because Baptist informed PBCA of that fact; however, PBCA communicated the debt without indicating its status as disputed. [Doc. 13 ¶ 159]. These allegations state a plausible claim for relief.

**2.6    COUNT VII – VIOLATION OF Fla. Stat. § 559.72(18)**

55. Next, Baptist alleges that count VII should be dismissed because the Amended Complaint fails to allege sufficient facts and circumstances to impose liability, vicariously, on Baptist under an agency theory. In the Amended Complaint, Plaintiff alleges that PBCA sent a collection communication to Plaintiff "at the direction and/or orders of Baptist []" and "using information provided by Baptist [] for that specific purpose." [Doc. 13 ¶ 169]. In that respect, Plaintiff avers that the letters sent by PBCA, were communications "from Baptist". [Doc. 13 ¶ 169]. Plaintiff also alleges that Baptist violated § 559.72(18) in when it sent the first, second, and third collection letters as to both the 445 and 643 debts. [Doc. 13 ¶ 170].

56. Additionally, in the Amended Complaint, it is alleged that Baptist (the creditor) sent several communications regarding the same debts at issue in the First, Second, and Third 445 and 643 debts. [Doc. 13 ¶¶ 19-20]. These correspondences were sent in July of 2024, and September of 2024, by Baptist directly. [Doc. 13 ¶¶ 19-20, 24]. After these notices were sent, Plaintiff alleges that Baptist "contracted with [PBCA] to collect, or attempt to collect, the debts from Plaintiff."

[Doc. 13 ¶ 28]. In doing so, Plaintiff claims that Baptist notified PBCA of the existence of the debt, the creditor, and the amounts due. [Doc. 13 ¶ 30].

57. After the contract was secured, Baptist no longer attempted to collect the 445 or 643 debts; instead, it was PBCA that sent three collection letters to the Plaintiff as to each of the debts. [Doc. 13 ¶¶ 40-41, 68, 97, 104, 114, 120]. These allegations are sufficient to state a plausible claim for relief under either an express or implied theory of agency liability.

58. "Under Florida law, an agency relationship has the following elements: 1) the principal acknowledges that the agent will act for it; 2) the agent accepts the undertaking; and 3) the principal controls the actions of the agent." See Nida Corp. v. Nida, 118 F. Supp. 2d 1223 (M.D. Fla. 2000). "Control is critical in determining agency." Id. Likewise, "under the doctrine of apparent authority, an agency will arise when the principal allows or causes others to believe that an individual has authority to conduct the act in question, inducing their detrimental reliance." See Coyote Portable Storage, LLC v. Pods Enters., 2012 U.S. Dist. LEXIS 197867 (N.D. Ga. Mar. 29, 2012).

59. Under applicable law, the principal is liable for the acts of his agent which are "within the course and scope of the agency." See Rossler v. Novak, 858 So. 2d 1158, 1161 (Fla. 2d DCA 2003). This proposition remains true, regardless of whether there is an express agency, or an implied agency, under principles of apparent authority. Id. Plaintiff alleges that Baptist contracted with PBCA for the purpose of collecting the debts at issue, which PBCA clearly accepted by sending not one, or two, but three separate collection attempts thereafter. Furthermore, each of the debt collection letters sent by PBCA recite the same debt and terms that were in the original notices from Baptist, indicating that Baptist controlled the information on which the letters were generated.

60. At the pleading stage, the Defendants disagreement with the factual allegations does not support dismissal, and the motion to dismiss must be denied.

## **CONCLUSION**

WHEREFORE, Plaintiff respectfully requests this Court: (1) deny the Motion to Dismiss, based on lack of standing; and (2) deny the Motion to Dismiss based on failure to state a claim, as to each of the above stated theories of relief; and (3) find that Plaintiff has set forth sufficient factual allegations to state a plausible claim for relief, on the face of the Complaint; and (4) order that the Defendants shall file a responsive pleading within fifteen (15) days of this Court's order; and (5) award all other relief deemed just and necessary under the circumstances.

DATED: May 20, 2025

                                                  Respectfully Submitted,

                                                  /s/ Thomas Patti
                                                **THOMAS PATTI, ESQ.**
                                                Florida Bar No. 118377
                                                E-mail:   Tom@pzlg.legal
                                                PATTI ZABALETA LAW GROUP
                                                110 SE 6th Street, 17th Floor
                                                Fort Lauderdale, Florida 33301
                                                Phone:    561-542-8550

                                                *COUNSEL FOR PLAINTIFF*

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on May 20, 2025, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

    /s/ Thomas J. Patti
**THOMAS J. PATTI, ESQ.**
Florida Bar No.: 118377