UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:25-cv-20858-RAR

**HERIBERTO VALIENTE,**

      **Plaintiff,**

v.

**BAPTIST HEALTH SOUTH FLORIDA, INC., and PALM BEACH CREDIT ADJUSTORS, INC., d/b/a KENDALL CREDIT AND BUSINESS SERVICE, INC.,**

      **Defendants.**

_____/

**DEFENDANTS' REPLY IN SUPPORT OF
MOTION TO DISMISS AMENDED COMPLAINT**

Defendants, Baptist Health South Florida, Inc. ("Baptist") and Palm Beach Credit Adjustors, Inc., d/b/a Kendall Credit and Business Service, Inc. ("PBCA"), by and through their undersigned counsel, hereby reply in support of their Motion to Dismiss Amended Complaint [DE 16].

## I.     PLAINTIFF FAILED TO ALLEGE STANDING

Plaintiff's Response in Opposition to Defendants' Motion to Dismiss (the "Response") [DE 22] fails to demonstrate that he adequately pled standing, and the Amended Complaint, therefore, should be dismissed for lack of standing. Plaintiff mis-characterizes *Drazen v. Pinto*, 74 F.4th 1336 (11th Cir. 2023), when he argues that a plaintiff's receipt of unwanted mail causes emotional distress that is analogous to the harm underlying the tort of intrusion upon seclusion. [DE 22 ¶ 19]. Plaintiff's interpretation of *Drazen* is wrong. *Drazen* is a Telephone Consumer Protection Act case involving the receipt of an unwanted text message, not mail sent to a mailbox. The Eleventh Circuit explained that: "[u]nwanted phone calls … are among the privacy intrusions that give rise to liability for intrusion upon seclusion … And as with 'the unwanted ringing of a phone from a phone call,' the 'undesired buzzing of a cell phone from a text message … is an intrusion into peace and quiet in a realm that is private and personal." *Drazen*, 74 F.4th at 1345.

The receipt of mail does not create an irritating intrusion and Plaintiff does not articulate how receiving mail is "akin to the 'undesired buzzing of a cell phone from a text message' such that the Collection Letter can be considered a similar 'intrusion into peace and quiet in a realm that is private and personal.'" *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462 n.1 (7th Cir. 2020) (Barrett, J.). *See also Heres v. Medicredit, Inc.*, No. 23-cv-24815-BLOOM/Torres, 2024 WL 3291738, at *11 (S.D. Fla. July 3, 2024) ("Unlike telemarking calls and text messages, Plaintiff lacks support for his position that receiving an unwanted debt letter causes the same kind of harm as an intrusion upon seclusion at common law."). Moreover, "Congress also expressed concern about 'invasions of individual privacy.' [15 U.S.C.] § 1692(a). But it addressed those problems

1

through a different section of the FDCPA: the statute's prohibition on harassment and abuse. *Id*. § 1692d." *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 826 (5th Cir. 2022). Plaintiff has not sued Baptist or PBCA based on that provision and cannot bootstrap the harms the provision recognizes as actionable to demonstrate standing to sue based on the claim at issue.

Here, the Amended Complaint merely alleges "Defendants' direct communications to Plaintiff, despite knowledge of his representation by counsel, constituted an intrusion upon Plaintiff's seclusion, a harm traditionally recognized under common law, by intentionally invading his privacy and disrupting his peace of mind with unwanted and prohibited debt collection attempts." [DE 13 ¶ 128]. This formulaic conclusion is similar to the plaintiff's allegation in *Heres* that "[t]he collection Letter disrupted and intruded upon Plaintiff's solitude and peace at home." *Heres*, 2024 WL3291738, at *12. In *Heres*, Judge Bloom concluded that allegation was insufficient: "Even assuming a debt letter *could* constitute a similar privacy invasion as an intrusion upon seclusion … Plaintiff's conclusory allegation fails to show he suffered such a harm." *Id.* at *12 (emphasis in original). Plaintiff also has failed to allege concrete injuries similar to those resulting from an intrusion upon seclusion and thus lacks standing to sue for damages.

II.     **PLAINTIFF FAILED TO STATE A CLAIM**

  A.    **Count 1 (Violation of 15 U.S.C. § 1692c(a)(2) against PBCA); Count 6 (Violation of Fla. Stat. § 559.72(18) against PBCA); and Count 7 (Violation of Fla. Stat. § 559.72(18) against Baptist), all Fail to State a Claim**

In Counts 1, 6 and 7, Plaintiff alleges that Baptist and PBCA communicated with Plaintiff despite their receipt of written notice that Plaintiff was represented by an attorney. [DE 13 ¶¶ 26, 95, 96, 111, 113, 132, 163, 164, 168, 169]. Plaintiff's Response urges the Court to refrain from considering the United States Postal Service ("USPS") Tracking Histories (the "Tracking Histories") as lying beyond the four-corners of the Amended Complaint, not central to Plaintiff's claims, and disputed. [DE 22 ¶¶ 33-35]. The Court should reject Plaintiff's request.

2

The exception to the four-corners rule identified by Plaintiff applies: "A court may consider a document that is not attached to a complaint when it is '(1) central to the plaintiff's complaint and (2) undisputed.'" *Figari v. United Parcel Serv., Inc.*, No. 24-CV-21857-RAR, 2024 WL 4717085, at *2 (S.D. Fla. Oct. 16, 2024) (citations omitted). "In this context, "undisputed" means that the authenticity of the document is not challenged." *Id.* at *2 (citation omitted).

The alleged delivery of the October and December Notices are not only central to, but are the keystones of, Plaintiff's allegations that Baptist and PBCA knew Plaintiff was represented by an attorney. Plaintiff attaches the Notices to his Amended Complaint, both of which state they were sent "*Via* CERTIFIED MAIL." [DE 13-4; 13-9]. Plaintiff concludes, with no supporting factual allegations, that Baptist received the October Notice "[o]n or about October 31, 2024, but no later than November 10, 2024" and that PBCA received the December Notice "on or before December 31, 2024." [DE 13 ¶¶ 95; 113].

Plaintiff has not expressly disavowed or rejected as untrue the fact that the Notices were sent by USPS Certified Mail, which "is a numbered Extra Service that … Provides the sender with a mailing receipt as confirmation an item was sent (see Form 3800/Receipt for Certified Mail)."[1] The USPS website provides an online tracking service.[2] The Tracking Histories attached to the Motion are from the USPS online tracking service. [DE 16-1; 16-2]. The USPS is a governmental entity.[3] "The Court may take judicial notice of government … website materials." *Coastal Wellness*

---

[1] *See* https://faq.usps.com/s/article/Certified-Mail-The-Basics, last visited May 22, 2025. The Certified Mail receipts attached to the envelopes, which Plaintiff intentionally omitted from his Amended Complaint, are on Form 3800. [DE 1-7; 1-10].

[2] *See* https://tools.usps.com/go/TrackConfirmAction_input?_gl=1*dq4h0k*_ga*MTg2MTE4MjA1OS4xNzQxOTg4NDEx*_ga_QM3XHZ2B95*czE3NDc5MzY3MTkkbzMkZzEkdDE3NDc5Mzcw OTAkajAkbDAkaDA, last visited May 22, 2025.

[3] *See* https://about.usps.com/who/profile/, last visited May 22, 2025.

3

*Centers, Inc. v. Progressive Am. Ins. Co.*, 309 F. Supp. 3d 1216, 1220 n.4 (S.D. Fla. 2018) (collecting cases); *See also R.S.B. Ventures, Inc. v. F.D.I.C.*, 514 F. App'x 853, 856 n.2 (11th Cir. 2013) (taking judicial notice of information found on the FDIC's website).

Additionally, although Plaintiff now argues that the Tracking Histories are "unverified, wholly unauthenticated 'printout[s]'" [DE 22 ¶ 35], he clearly relied upon them and cited them verbatim in the Amended Complaint. Specifically, Plaintiff alleges the October Notice was delayed until approximately October 31, 2024, "[d]ue to a ***regional weather delay***" without any explanation of where or how he learned of the delay. [DE 13 ¶ 27 (emphasis added)]. Plaintiff's allegation clearly was taken from the Tracking History for the October Notice, which contains two entries, dated October 15, 2024 and October 16, 2024, both of which state "Processing Exception, ***Regional Weather Delay***." [DE 16-1 at pp. 2-3 (emphasis added)].

Binding precedent authorizes Baptist and PBCA to attach the Tracking Histories to their Motion. In considering a Rule 12(b)(6) motion, a court "may consider only the complaint itself and any documents referred to in the complaint which are central to the claims." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997)). *See also Rattner v. 1809 Brickell, LP*, No. 1:21-CV-23426-KMM, 2022 WL 19331241, at *7 (S.D. Fla. Apr. 18, 2022) ("the Court may consider the copy of the Agreement attached as an exhibit to the Brickell Defendants' Motion to Dismiss, … because the Agreement is central to Plaintiff's breach of contract claim—Plaintiff quotes the Agreement in his Amended Complaint—and the authenticity of the Agreement is undisputed.") (citing *Day v. Taylor*, 400 F. 3d 1272, 1276 (11th Cir. 2005)).

Generally, the Court cannot consider matters outside of a complaint when reviewing a Rule 12(b)(6) motion to dismiss. *See* Fed. R. Civ. P. 12(d) (requiring a court to treat a motion to dismiss

4

as a Rule 56 motion for summary judgment when it does not exclude matters outside of the complaint). However, the Court can consider exhibits attached to the amended complaint, as well as exhibits attached to prior versions of the complaint, when ruling on a motion to dismiss. *See* Fed. R. Civ. P. 10(c) ("[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes"); *Gross v. White*, 340 F. App'x 527, 534 (11th Cir. 2009) ("[a] district court ruling on a motion to dismiss is not required to disregard documents that the plaintiff himself filed with his original complaint," so exhibits attached to the original complaint that were not attached to the amended complaint were not materials "outside" the pleadings); *White v. Nassau Life Ins. Co.*, No. 1:20-CV-03694-SDG, 2021 WL 9721272, at *1 n.7 (N.D. Ga. Aug. 16, 2021) (same). Here, the tracking numbers were attached as exhibits to the original Complaint [DE 1-7; 1-10]. Accordingly, the Court properly can and should consider the Tracking Histories that are generated by the USPS online tracking service using the certified mail numbers provided in the exhibits attached to the original Complaint. That history refutes Plaintiff's claim of delivery.

      Plaintiff also argues that Baptist is PBCA's principal and is thus liable for PBCA's alleged violations of the Fair Debt Collection Practices Act ("FDCPA") because PBCA's acts were within the course and scope of agency. [DE 22 ¶ 59]. Plaintiff, however, fails to identify a single allegation in the Amended Complaint regarding Baptist's control over PBCA's actions, or that Baptist created an appearance of an agency relationship. "Apparent authority does not arise from the subjective understanding of the person dealing with the purported agent or from appearances created by the purported agent himself." *Roessler v. Novak*, 858 So.2d 1158, 1162 (Fla. 2d DCA 2003). Apparent agency exists "only if all three of the following elements are present: (a) a representation by the purported principal; (b) a reliance on that representation by a third party; and (c) a change in position by the third party in reliance on the representation." *Roessler*, 858 So.2d at 1161. Nowhere

5

in the Amended Complaint does Plaintiff allege that he relied on any representation by Baptist or that he changed his position in reliance of any unidentified representation.

B.     **Count 2 (Violation of 15 U.S.C. § 1692g(b) against PBCA) Fails to State a Claim**

Plaintiff posits that Baptist and PBCA misconstrue the holding of *Loper Bright Enters. v. Raimondo*, because Congress delegated authority to the Bureau of Consumer Financial Protection ("BCFP") to carry out the purposes of the FDCPA through 12 U.S.C. § 5491(a) and 12 C.F.R. § 1006.1(a)-(b) and the court is required to respect the delegation and enforce the interpretation of the agency, unless it exceeds its delegation. [DE 22 ¶¶ 45, 46].

Statutory interpretation is the role of the judiciary, not administrative agencies in the executive branch. *See Loper*, 603 U.S. at 392 (Section 706 of the APA "provide[d] that questions of law are for courts *rather than agencies* to decide in the last analysis") (quoting H.R. Rep. No. 1980, 79th Cong., 2d Sess., 44 (1946) (emphasis in original)). And "agency interpretations of statutes - - like agency interpretations of the Constitution - - are not entitled to deference." *Loper*, 603 U.S. at 392. Even when a statute delegates discretionary authority to an agency, "the role of the reviewing court under the [Administrative Procedure Act] is, as always, to independently interpret the statute and effectuate the will of Congress subject to constitutional limits." *Id.* at 395. *See Org. of Pro. Aviculturists, Inc. v. U.S. Fish & Wildlife Serv.*, 130 F.4th 1307, 1314 (11th Cir. 2025) (courts interpreting statutory language "begin with the text and structure of the [statute]. And when a statute's meaning is plain and unambiguous, [courts] also end there") (citation and quotation marks omitted); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016) (en banc) (Courts cannot rewrite statutes and "do not defer to an agency's interpretation of a statute **when the text is clear**.") (emphasis added).

The text of 15 U.S.C. § 1692g(b) is clear and unambiguous: "Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor." The statute does ***not*** state that the end of the validation period is "any date that is at least five days (excluding legal public holidays identified in 5 U.S.C. 6103(a), Saturdays and Sunday) after the debt collector provides it." 12 C.F.R. § 1006.34(b)(5). Section 1006.34(b)(5) impermissibly ***adds requirements to the validation period that are <u>not</u> in the statute***. As such, the Court need not defer to it. *See Quinn-Davis v. TrueAccord Corp.*, No. 1:23-cv-23590-LEIBOWITZ/REID, 2024 WL 4851344, at *5 (S.D. Fla. Nov. 20, 2024) (in analyzing the applicability of 12 CFR § 1006.6(b)(1)(i)(1), the court concluded: "[w]hile the CFPB interpretation may have some appeal (on policy grounds), I am neither bound by it nor required to defer to it."); *Kinney v. Tasman Credit Corp.*, 2025 WL 1296682, at * (N.D. Al. May 5, 2025) (concluding that, under *Loper*, the court owed "no deference to a regulations' interpretation of a statute" in its analysis of plaintiff's asserted violation of FDCPA § 1692d and Regulation F, and looking only "to the plain language of § 1692d itself" to determine whether there was a violation).

    **C.**    **Count 3 (Violation of 12 C.F.R. § 1006.34(c)(2)(iii) and 15 U.S.C. §§ 1692e, 1692f, and 1692g against PBCA) Fails to State a Claim**

In his Response, Plaintiff regurgitates the legal conclusions set forth in his Amended Complaint that a permissible "itemization date" is not included on PBCA's First 445 and 643 Letters, which violates 12 C.F.R. § 1006.34(c)(2)(iii) and 15 U.S.C. §§ 1692e, f and g. [*See* DE 13 ¶¶ 42-50; 69-78; 141-152; DE 22 ¶¶ 48-51]. However, Plaintiff's attempt to impose additional requirements on PBCA that extend well beyond the language of the FDPCA is impermissible. As discussed in Section II(B) above, "agency interpretations of statutes - - like agency interpretations of the Constitution - - are not entitled to deference." *Loper*, 603 U.S. at 392.

7

Moreover, the text of Sections 1692e, f and g are not ambiguous. Section 1692e(2)(A) prohibits "[t]he false representation of the character, amount, or legal status of any debt." Section 1692f prohibits "unfair or unconscionable means to collect or attempt to collect any debt." And Section 1692g requires an initial communication to contain specific information, none of which is an "itemization date" as defined by 12 C.F.R. § 1006.34(c)(2)(iii). PBCA's initial communications to the Plaintiff fully comply with the requirements of the FDCPA.

### D. Count 4 (Violation of 15 U.S.C. § 1692e(2)(A) against PBCA) and Count 8 (Violation of Fla. Stat. § 559.72(9) against Baptist) Fail to State a Claim

Plaintiff argues that Defendants make only factual challenges to Counts 4 and 8, both of which allege that they sought to collect from Plaintiff amounts that already had been paid. [DE 22 ¶ 52]. The Amended Complaint, however, is a textbook example of legal conclusions couched as factual allegations and speculative conclusory statements.

In his Amended Complaint, Plaintiff alleges that "Baptist Health billed UnitedHealth for the treatment of the Injury it provided Plaintiff on July 11, 2024, and was paid $428.80. The $428.80 paid to and accepted by Baptist Health fully satisfied the amount owed by Plaintiff to Baptist Health for the treatment rendered on July 11, 2024" [DE 13 ¶¶ 11, 12] and "Baptist Health Billed UnitedHealth for the treatment of the Injury it provided Plaintiff on July 20, 2024, and was paid $297.20. The $297.20 paid to and accepted by Baptist Health fully satisfied the amount owed by Plaintiff to Baptist Health for the treatment rendered on July 20, 2024" [*Id.* ¶¶ 15, 16]. Plaintiff further alleges that:

> PBCA "sought to collect from Plaintiff represented debts that had already been paid. To the extent any amount was owed by Plaintiff to Baptist Health …the amount which Plaintiff owes, if anything, does not equal the amounts demanded by [PBCA]" in the First, Second and Third 643 and 445 Letters. "Thus, by falsely representing the amount of the 445 Debt and the 643 Debt, [PBCA] violated § 1692e(2)(A) of the FDCPA." [*Id.* ¶ 156].

8

> "Baptist Hospital knew that it had been fully compensated for the medical services it rendered to Plaintiff on July 11, 2024, and July 20, 2024, by and through Plaintiff's insurance company; however, by and through 445 Bill [sic], the Second 445 Bill, the 643 Bill, and each collection letter sent by [PBCA] on its behalf, Baptist Hospital sought to collect additional amounts from Plaintiff that it (Baptist Health) knew it did not have any authority to collect. As such, [Baptist] violated § 559.72(9) of the FCCPA by demanding funds from Plaintiff …" [*Id.* ¶ 174].

These recitations of legal conclusions couched as facts are insufficient to state a claim. Plaintiff has not alleged *how* Plaintiff knew that his insurance carrier fully satisfied the amounts owed; that Plaintiff contacted Baptist or his insurance carrier to confirm that the amounts owed were fully satisfied; or that Plaintiff received confirmation from either Baptist or PBCA that the amounts were fully satisfied. Nor does Plaintiff allege any facts to suggest how Baptist "knew that it had been fully compensated." "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Lewis v. Mercedes-Benz USA,* LLC, 530 F. Supp. 3d 1183, 1213 (S.D. Fla. 2021) (Ruiz, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1937 (2009)).

The exhibits attached to the Amended Compliant contradict the general, unsubstantiated, conclusory allegations in the Amended Complaint and show the allegations to be untrue. The initial letters from Baptist explain that Plaintiff's insurance carrier identified the out-of-pocket expenses as Plaintiff's responsibility. [DE 13-1; 13-2]. Thereafter, the correspondence regarding the $445.80 and the $643.20 out-of-pocket expenses all identify the same amounts due. [DE 13-3; 13-6; 13-8; 13-10 (for the $445.80 expense); and DE 13-5; 13-7; 13-11 (for the $643.20 expense)]. "A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss. … When an exhibit contradicts general allegations of a pleading—thereby showing the allegations to be untrue and foreclosing recovery as a matter of law—the exhibit controls." *Kenyon v. Silverman*, No. 23-10235, 2024 WL 2831719, at *2 (11th Cir. June 4, 2024) (citations omitted).

### E. Count 5 (Violation of 15 U.S.C. § 1692e(8) against PBCA) Fails to State a Claim

The Response argues that PBCA violated § 1692e(8) by not communicating to Plaintiff that Plaintiff disputed his out-of-pocket expenses, because § 1692e(8) applies to "any person" not just a "credit reporting agency." [DE 22 ¶ 54]. Although Plaintiff admits that "a vast amount of authority discussing violations of § 1692e(8) concerns a credit reporting agency, as the "any person described in § 1692e(8)" [DE 22 ¶ 54], he fails to cite a single case holding that, when a debt collector communicates credit information to a debtor, the debt collector must inform the debtor that the debtor disputes the amount of the debt. This interpretation of the statute makes no sense.

The statutory requirement to inform "any person" if a debt is disputed only makes sense if the communication is to a third party. And that is how cases have interpreted § 1692e(8). "[Section] 1692e(8) merely requires a debt collector who knows or should know that a given debt is disputed to disclose its disputed status to persons inquiring about a consumer's credit history." *Brady v. Credit Recovery Co., Inc.*, 160 F. 3d 64, 67 (1st Cir. 1998). In *Freeman v. Ocwen Loan Servicing, LLC*, the Seventh Circuit held that an FDCPA plaintiff who alleged that a debt collector wrongly reported her to be in default on a loan lacked standing because she had not provided "specific facts" that the debt collector "disseminated the inaccurate reporting to a third party, such as [the credit reporting agency], who understood the defamatory significance of the inaccurate reporting." 113 F. 4th 701, 710 (7th Cir. 2024).

WHEREFORE, Defendants, Baptist Health South Florida, Inc. and Palm Beach Credit Adjustors, Inc., d/b/a Kendall Credit and Business Service, Inc., respectfully request that the Amended Complaint be dismissed with prejudice.

        Respectfully submitted,

        ISICOFF RAGATZ
        601 Brickell Key Drive, Suite 750
        Miami, Florida 33131
        Tel.: (305) 373-3232
        Fax: (305) 373-3233

        By: /s/ Catherine A. Mancing
            Eric D. Isicoff
            Florida Bar No. 372201
            Isicoff@irlaw.com
            Catherine A. Mancing
            Florida Bar No. 23765
            Mancing@irlaw.com

## **CERTIFICATE OF SERVICE**

I **HEREBY CERTIFY** that a true and correct copy of the foregoing was served via CM/ECF on this 27th day of May 2025 upon the following:

Thomas Patti, Esq.
Victor Zabaleta, Esq.
Patti Zabaleta Law Group
110 SE 6th Street, 17th Floor
Fort Lauderdale, FL 33301
Tel.: (561) 542-8550
E-mail: Tom@pzlg.legal
E-mail: Victor@pzlg.legal

        By: /s/ Catherine A. Mancing
            Catherine A. Mancing