UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20858-RAR

**HERIBERTO VALIENTE**,

    Plaintiff,

v.

**PALM BEACH CREDIT ADJUSTORS, INC.**,
*d/b/a* **KENDALL CREDIT AND BUSINESS SERVICE, INC.**, *et al.*,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendants' Motion for Final Summary Judgment ("Defs.' Mot."), [ECF No. 40], accompanied by Defendants' Statement of Material Facts in Support of their Motion for Final Summary Judgment ("Defs.' SOMF"), [ECF No. 41].[1] Defendants' Motion maintains that Plaintiff has failed to establish he sustained a concrete injury in fact and therefore lacks standing. Defs.' Mot. at 2–6. The Court agrees. Accordingly, having carefully reviewed the relevant pleadings, the record, and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion, [ECF No. 40], is **GRANTED** as set forth herein.

---

[1] Plaintiff filed a Response in Opposition to Defendants' Motion for Final Summary Judgment ("Pl.'s Resp."), [ECF No. 51], and a Statement of Material Facts in Opposition to Defendants' Statement of Undisputed Material Facts in Support of Their Motion for Final Summary Judgment ("Pl.'s Opp SOMF"), [ECF No. 52]. Defendants filed a Reply in Support of Motion for Final Summary Judgment ("Defs.' Reply"), [ECF No. 53]. Accordingly, Defendants' Motion is ripe for adjudication.

## **BACKGROUND**

This is an action under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and the Florida Consumer Collection Practices Act ("FCCPA"), Fla. Stat. § 559.72, arising from bills and debt collection letters sent to Plaintiff Heriberto Valiente from Defendants Palm Beach Credit Adjustors, Inc. *doing business as* Kendall Credit and Business Service, Inc. ("Kendall Credit") and Baptist Health South Florida, Inc. ("Baptist Health") (collectively, "Defendants"). *See generally*, Am. Compl., [ECF No. 13].

Defendants' Motion presents the following undisputed material facts. *See generally*, Defs.' SOMF. Plaintiff suffered an injury on July 11, 2024. Defs.' SOMF ¶ 27. On two occasions, on July 11, 2024 and on July 20, 2024, he received medical treatment at Kendall Lakes Urgent Care, which is owned and operated by Baptist Health. *Id*. ¶¶ 27, 55; Am. Compl. ¶¶ 7–9. Plaintiff was billed $1,072.00 and $743.00, for the July 11, 2024 and July 20, 2024 treatments, respectively. Defs.' SOMF ¶¶ 30, 56. After Plaintiff's health insurance processed the claims, Plaintiff owed $643.20 ("643 Account") and $445.80 ("445 Account") for the July 11, 2024 and July 20, 2024 treatments, respectively. Defs.' SOMF ¶¶ 31–32, 56.

In late August through September 2024, Baptist Health sent Plaintiff requests for payment for both the 643 and 445 Accounts on three different occasions. Defs.' SOMF ¶¶ 33–37, 57–61. Thereafter, Kendall Credit, on behalf of Baptist Health, sent Plaintiff Regulation F Statements, requesting payment of the 643 and 445 Accounts on three different occasions. Defs.' SOMF ¶¶ 43–50, 66–71. Plaintiff never made a payment on either the 643 or 445 Accounts. Defs.' SOMF ¶ 40, 63; Pl.'s Opp SOMF ¶¶ 40, 63.

Plaintiff alleges that Defendants' "unlawful collection attempts caused Plaintiff emotional distress, loss of sleep and time wasted, including actual damages that Plaintiff values at approximately $5,000.00." Pl.'s Resp. at 2. Specifically, upon receiving the letters, Plaintiff was

confused about why he was being charged, after he had been informed that his insurance would cover the debts. Deposition of Heriberto Valiente ("Valiente Dep."), [ECF No. 41-3] at 51:11–52:6.[2] This caused the quality of his sleep to suffer, as he worried not only about why these letters were being sent, but also whether these debt collection attempts would escalate. *Id*. at 51:22–52:6; 77:11–14. However, Plaintiff never sought professional help nor was prescribed medication for his loss of sleep. *Id*. at 112:6–9.

With respect to time wasted, Plaintiff alleges that he wasted approximately eight minutes after receipt of the collection letters because he became upset, and thereafter expended at least fifteen minutes preparing and delivering the letters to his attorney. Am. Compl. ¶¶ 99–100, 106–107, 118–119, 124–125. Plaintiff, "[c]onfused, frustrated, upset, and angry [about the bills] began researching for information about his rights and balancing-billing, spending approximately five (5) hours, valued at $200.00 across multiple days[,] searching [the] internet for resources, information, and guidance." Am. Compl. ¶ 23. Such research was undertaken with the goal of understanding whether Plaintiff would "have a case if the hospital bills [him] incorrectly[.]" Valiente Dep., [ECF No. 41-3] at 109:8–18.

Plaintiff filed his initial Complaint on February 24, 2025, [ECF No. 1], and thereafter filed an Amended Complaint on April 9, 2025, [ECF No. 13], alleging that Defendants falsely represented he owes medical debt. *See generally*, Am. Compl. Plaintiff specifically asserts eight counts against Defendants, among them that Defendants violated 15 U.S.C. § 1692 and Fla. Stat. § 559.72 by communicating with Plaintiff directly when Plaintiff was represented by an attorney; by failing to provide Plaintiff with the requisite information and disclosures with regards to the debt; by seeking to collect debts that had already been paid; and by attempting to collect the debts

---

[2] In the event of any discrepancy between the page numbers in the footer of a document and those in the CM/ECF heading, the page numbers used herein refer to the page number reflected in the CM/ECF heading.

when Plaintiff had disputed them. *Id*. ¶¶ 130–175. In connection with these allegations, Plaintiff seeks damages including statutory and actual damages, an injunction prohibiting Defendants from engaging in further collection activities in violation of the FCCPA, and reasonable costs and attorneys' fees. *Id*. On September 30, 2025, Defendants filed the instant Motion.

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 56

Summary judgment is rendered if the pleadings, discovery, disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable factfinder to find for the non-moving party. *See id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). At summary judgment, the Court views the evidence and all factual inferences "in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted), and the moving party bears the burden of proving the absence of a genuine issue of material fact. *See Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

If there are any factual issues, summary judgment must be denied, and the case proceeds to trial. *See Whelan v. Royal Caribbean Cruises Ltd.*, No. 12-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013). Furthermore, when the parties "agree on the basic facts, but disagree about the inferences that should be drawn from these facts[,]" summary judgment "may be inappropriate." *Id.* However, "[a] mere 'scintilla' of evidence" in support of the non-movant's position will not suffice. *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990).

## II. Standing

Article III of the Constitution limits the jurisdiction of federal courts to the adjudication of "Cases" and "Controversies" only. U.S. Const Art. III § 2; *Stalley ex rel. U.S. v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). This case-or-controversy clause requires that plaintiffs "must establish that they have standing to sue" in federal court. *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Thus, standing is a "threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "Because standing is jurisdictional, a dismissal for lack of standing has the same effect as a dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)." *Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203 n.42 (11th Cir. 1991) (citation omitted).

To establish the individual standing prerequisites, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "The 'foremost' standing requirement is injury in fact." *Trichell v. Midland Credit Management, Inc.*, 964 F.3d 990, 996 (11th Cir. 2020) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998)). An injury in fact exists if a plaintiff has "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

While "[a] 'concrete' injury must be '*de facto*'; that is, it must actually exist[,]" the injury need not be tangible given that "intangible injuries can nevertheless be concrete." *Id.* at 340. "Central to assessing concreteness is whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as a physical harm, monetary harm, or various intangible harms[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413,

417 (2021) (citing *Spokeo*, 578 U.S. at 340)).  Concrete intangible harms may include reputational harms, disclosure of private information, and intrusion on seclusion.  *Id.* at 425 (collecting cases).  And while "a plaintiff cannot establish constitutional standing based solely on the defendant's 'bare violation of a statute,' he can do so by showing that the violation caused him some real harm[.]"  *Toste v. Beach Club at Fontainebleau Park Condo. Ass'n, Inc.*, No. 21-14348, 2022 WL 4091738, at *3 (11th Cir. Sept. 7, 2022) (quoting *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 920 (11th Cir. 2020)).

Beyond establishing that a plaintiff has suffered an injury in fact, he or she must allege a "causal connection between the injury and the conduct complained of"; in other words, the injury must be "fairly traceable to the challenged action of the defendant."  *Lujan*, 504 U.S. at 560 (cleaned up).  However, Article III standing does not require that defendants be the most immediate cause, or even a proximate cause, of plaintiff's injuries.  *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014).  "Even harms that flow indirectly from the action in question can be said to be 'fairly traceable' to that action for standing purposes."  *Wilding v. DNC Services Corporation*, 941 F.3d 1116, 1125–126 (11th Cir. 2019) (quoting *Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1273 (11th Cir. 2003)) (alteration omitted).

The three standing prerequisites must be supported "with the manner and degree of evidence required at the successive stages of the litigation."  *Wilding*, 941 F.3d at 1124 (quoting *Lujan*, 504 U.S. at 561); *see also 31 Foster Children v. Bush*, 329 F.3d 1255, 1263 (11th Cir. 2003) ("How much evidence is necessary to satisfy [the standing requirement] depends on the stage of litigation at which the standing challenge is made.").  And "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]"  *TransUnion*, 594 U.S. at 431.  "Although '[a]t the pleading stage, . . . factual allegations of injury resulting from the

defendant's conduct may suffice,' '[i]n response to a summary judgment motion, . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' . . . which for purposes of the summary judgment motion will be taken as true." *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1283 (11th Cir. 2019) (quoting *Lujan*, 504 U.S. at 561 and FED. R. CIV. P. 56(e)). Thus, the burden to establish standing at the summary judgment stage "is satisfied only if 'affidavits or other submissions indicate that a genuine issue of material fact exists concerning standing.'" *Id*. (quoting *Bischoff v. Osceola County*, 222 F.3d 874, 881 (11th Cir. 2000)).

## **ANALYSIS**

Defendants' Motion asserts that summary judgment should be granted because Plaintiff has failed to establish that he sustained a concrete injury in fact and has failed to submit any evidence demonstrating a violation of the FDCPA or FCCPA by either Defendant. *See* Defs.' Mot. at 2. Because "[w]hether the plaintiffs have standing to sue is a threshold jurisdictional question[,]" the Court begins with an analysis of Defendants' attack on Plaintiff's Article III standing. *Muransky*, 979 F.3d at 923 (citing *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1083 (11th Cir. 2019)); *see also Dep't of Educ. v. Brown*, 600 U.S. 551, 560 (2023) ("We have an obligation to assure ourselves' of litigants' standing under Article III before proceeding to the merits of a case." (internal quotations and citations omitted)).

Defendants argue that Plaintiff has presented "no evidence that he sustained a concrete injury" and has thus failed to "identify any disputed material facts that rise to the level of competent summary judgment evidence sufficient to survive Defendants' Motion." *See* Defs.' Mot. at 3–4; Defs.' Reply at 1. Plaintiff retorts that "Defendants' unlawful collection attempts caused Plaintiff emotional distress, loss of sleep and time wasted, including actual damages that Plaintiff values at approximately $5,000.00." Pl.'s Resp. at 2. But Defendants dispute this fact, maintaining that

"[t]he record evidence in this case establishes . . . [that] Plaintiff did not sustain a concrete injury in fact[.]" Defs.' Reply at 10. Thus, the question before the Court is whether the harms suffered by Plaintiff are sufficiently concrete to confer Article III standing. As explained herein, careful review of the specific harms alleged indicates that Plaintiff has failed to establish standing. The Court addresses each type of specific harm—both tangible and intangible—in turn.

### I. Wasted Time, Emotional Harm, and Loss of Sleep

"The most obvious [concrete injuries] are traditional tangible harms, such as physical harms and monetary harms." *Bachiri v. Medicredit, Inc.*, No. 25-10356, 2025 WL 2803798, at *2 (11th Cir. Oct. 2, 2025) (quoting *TransUnion*, 594 U.S. at 425). Because "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical'", the Court considers each of Plaintiff's asserted tangible harms: wasted time, emotional distress, and loss of sleep. *See Spokeo*, 578 U.S. at 339 (quoting *Lujan*, 504 U.S. at 560).

With respect to Plaintiff's asserted injury of wasted time, Defendants maintain that because Plaintiff "unilaterally concluded that he did not owe anything on the 643 and 445 Accounts, his receipt of the 643 and 445 Statements caused him to research whether he had a case . . . [but he] did not read any of the Statements, did not make any payments and did not contact Baptist, PBCA or his insurance carrier to inquire about why he was receiving bills for the medical services he received; the only thing Mr. Valiente did was send copies of the mail to his lawyer." Defs.' Mot. at 4. In *Bachiri*, Plaintiff similarly "asserted that he was forced to contact [Defendants] to correct their billing error, and the time he spent unsuccessfully disputing the collection efforts left him frustrated, stressed, embarrassed, among other things, and with no choice but to contact an attorney." 2025 WL 2803798, at *2. The Court disagreed that these amounted to "textbook" Article III injuries to establish standing, finding that Plaintiff "does not allege that he spent any

money disputing the debt, that he responded to the collection letters by making a payment or promising to do so, or that the reporting of this incorrect information harmed his credit score or financial prospects." *Id*. On this basis, the Court concluded that Plaintiff could not rely on "self-imposed injur[ies] to satisfy Article III." *Id*. (citing *Nelson v. Experian Info. Sols. Inc.*, 144 F.4th 1350, 1354 (11th Cir. 2025)); *see also Crowder v. Andreu, Palma, Lavin & Solis, PLLC*, No. 2:19-CV-820-SPC-NPM, 2021 WL 1338767, at *6 (M.D. Fla. Apr. 9, 2021) (finding that Plaintiff did not have standing to bring a FDCPA claim after receiving a debt validation letter and noting "any time [plaintiff] spent researching [] about a hypothetical future harm does not confer standing.").

Plaintiff attempts to distinguish *Bachiri*, highlighting how, in that case, "the plaintiff alleged only wasted time disputing a billing error and vague emotional distress (frustration, stress, anxiety), without any dissemination of inaccurate information or other underlying concrete harm." Pl.'s Resp. at 6. Instead, Plaintiff directs the Court to *Walters v. Fast AC, LLC*, where the plaintiff was found to have suffered a concrete injury in fact when "(1) he was forced to spend time disputing his debt; (2) his credit took a hit, preventing him from making other purchases or refinancing his home; (3) he spent money faxing documents to his attorney; and (4) he felt anxious, exploited, embarrassed, and worthless." 60 F.4th 642, 648 (11th Cir. 2023). Plaintiff argues that he similarly "incurred tangible monetary costs to mitigate threatened credit harm arising from the violations—not mere self-imposition. Plaintiff spent more than five hours, possibl[y] ten hours, researching after receipt of the letters." Pl.'s Resp. at 6.

The Court finds *Walters* to be inapposite, however, as there is no evidence in the record that Plaintiff suffered comparable harms. Though Plaintiff notes that he was concerned about the potential escalation of Defendants' debt collection practices, Plaintiff was never imminently threatened with any enforcement action, nor was his credit score ever impacted. Therefore, Plaintiff's purportedly concrete injury is "conjectural or hypothetical." *Spokeo*, 578 U.S. at 339;

*see also Bachiri*, 2025 WL 2803798, at *3 ("While [Plaintiff] contended there was the threat that 'this fictitious collection' would be reported on 'one or more of his credit reports,' 'allegations of possible future injury are not sufficient.'" (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). Though Plaintiff asserts that his research was undertaken to mitigate threatened credit harm, and was therefore not self-imposed, this "conclusory allegation" is unsupported by record evidence and "simply not enough." *Muransky*, 979 F.3d at 933. Indeed, Plaintiff's deposition testimony makes clear that his "research was [undertaken] because [he] was afraid of *potential future harm* to his credit . . . or the fact of it being reported to the . . . credit bureau." Valiente Dep., [ECF No. 41-3] at 111:8–13 (emphasis added). And Plaintiff also indicated that he sought to understand whether he would "have a case if the hospital bills [him] incorrectly[.]" *Id.* at 109:8–18. But the Eleventh Circuit has made clear that "the time and money that [a plaintiff] spen[ds] on the FDCPA lawsuit itself cannot give rise to a concrete injury for Article III standing purposes." *Toste*, 2022 WL 4091738, at *4.

Plaintiff's argument also overlooks a fundamental tenet of the Eleventh Circuit's caselaw on standing. That is, "whether a plaintiff's 'assertion of wasted time and effort' is a concrete harm depends on whether the wasted time and effort responded to something that 'is itself a concrete harm.'" *Nelson*, 144 F.4th at 1355 (quoting *Muransky*, 979 F.3d at 931). In *Nelson*, Plaintiff alleged that she was injured when she expended time and money to correct personal identifying information in her credit report. *Nelson*, 144 F.4th at 1354. However, the Court held that this theory of standing "fails under a straightforward application of precedent, which has recognized that 'not all inaccuracies cause harm or present any material risk of harm[,]'" "[w]ithout something more than a bare statutory violation—something like the disclosure of erroneous information to a third party[.]" *Id.* (quoting *Spokeo*, 578 U.S. at 342).

Page 10 of 16

By contrast, in *Toste*, Plaintiff alleged that defendants violated the FDCPA by misstating the amount of his debt and threatening to foreclose on a claim of lien filed against his condominium if he did not pay the amount stated in the letter. 2022 WL 4091738, at *2. The defendants also filed the claim of lien in the public record, "thereby communicating with a third party about his debt without his permission." *Id*. Thus, "the defendants caused concrete harm before [Plaintiff] ever consulted with a lawyer, by filing a claim of lien against his home for an inaccurate amount and refusing to release the lien unless he paid more than he really owed." *Id*. at *4; *see also Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir. 2021) (Finding that Plaintiff "has shown a concrete injury in the form of the emotional distress and time he spent contesting the inaccurate information [where] he suffered . . . from stress, anxiety, and lack of sleep from the aftermath of his Chapter 7 bankruptcy discharge, and that he devoted nearly 400 hours to correcting the inaccurate information on his credit report." (internal quotations omitted)).

Here, as in *Bachiri*, Plaintiff "miss[es] the mark" because he has failed to show that he "spent money and time to correct an error *that itself caused a concrete harm*." *Bachiri*, 2025 WL 2803798, at *2 (quoting *Nelson*, 144 F.4th at 1355 (emphasis in original)). Plaintiff highlights how, in *Bachiri*, "the reporting of the plaintiff's wrongful debt to third parties was not imminent, definite or certainly impending as the [] charge was removed from his collection account" whereas "[h]ere, Plaintiff's collection letters totaled $1,089.00 in alleged debt and has never been removed given it is the subject of this suit." Pl.'s Resp. at 6. However, there is no record evidence indicating that this alleged debt has been disclosed to a third party—or that it has impacted Plaintiff's credit score. And "[t]he mere presence of an inaccuracy in an internal credit file" in violation of federal statute inflicts "no concrete harm" unless it is "disclosed to a third party." *TransUnion LLC*, 594 U.S. at 434. Accordingly, Plaintiff's assertions of wasted time and money are insufficient to confer Article III standing.

Plaintiff's remaining harms of loss of sleep and emotional distress fare no better.  Plaintiff specifically alleges that he "suffered agony to the point where he could not go to sleep and did not sleep as good as he should" and "faced emotional distress as to whether he kept being billed, whether he was going to get additional letters, and whether he would be sent to collection."  Pl.'s Resp. at 5.  This led him to seek "help for the loss of sleep through over-the-counter means."  *Id*.  However, "assertions of emotional distress are no more than 'conjectural' or 'hypothetical' [when plaintiff] has not identified any actual harm that resulted from [defendant's] wrongful collection attempts that would generate such psychological injuries."  *Bachiri*, 2025 WL 2803798, at *3 (citing *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 939 (7th Cir. 2022) (holding that "[c]onfusion . . . is not a concrete injury in the FDCPA context" and that "worry, like confusion, is [also] insufficient to confer standing[.]")).  And, as this Court has explained, a plaintiff "cannot rely solely on his feelings of distress, confusion, or anxiety to fabricate concrete injury."  *Preisler v. Eastpoint Recovery Grp., Inc.*, No. 20-62268, 2021 WL 2110794, at *5 (S.D. Fla. May 25, 2021); *see also Cooper v. Atl. Credit & Fin. Inc*, 822 F. App'x 951, 955 (11th Cir. 2020) ("[Plaintiff's] asserted injury of confusion was 'conjectural' or 'hypothetical,' because she has not alleged any actual harms that arose from her confusion.").

Plaintiff cites to *Toste* and *Walters* in support of his argument that emotional distress manifesting in loss of sleep can be sufficiently concrete to confer Article III standing.  Pl.'s Resp. at 3–4.  However, the facts of these cases are clearly distinguishable, as plaintiff's emotional harm was also accompanied by wasted time rectifying a concrete harm, such as a negative effect on credit (*Walters*) and a lien against plaintiff's home (*Toste*).  Thus, "the [Eleventh Circuit] ha[s] found standing where the plaintiff experienced *both* emotional distress manifesting in a loss of sleep *and* wasted time spent resolving problems caused by the defendant's mistakes."  *Toste*, 2022

WL 4091738, at *4 (citing *Losch*, 995 F.3d at 943) (emphasis added).³ Here, given that Plaintiff has failed to show that his wasted time was undertaken to correct a concrete harm, Plaintiff's emotional distress, on its own, cannot confer Article III standing. *See e.g., Luce v. LVNV Funding LLC*, No. 21-82143, 2023 WL 1472582, at *5 (S.D. Fla. Jan. 18, 2023), *report and recommendation adopted*, No. 21-82143, 2023 WL 1466815 (S.D. Fla. Feb. 2, 2023) ("Without more, Plaintiff's statements that he feels stress, worry, anxiety, frustration, and anger because Defendant failed to remove the dispute notation is not sufficiently concrete and particularized to establish Article III standing."); *Heres v. Medicredit, Inc.*, No. 23-24815, 2024 WL 3291738, at *9 (S.D. Fla. July 3, 2024) ("Plaintiff [] fails to show he suffered a concrete injury where, as here, he alleges experiencing feelings of emotional distress without sufficiently alleging he suffered related tangible injuries.").

"In sum, 'we will not imagine or piece together an injury sufficient to' satisfy Article III, 'and we are powerless to create jurisdiction by embellishing a deficient allegation of injury.'" *Bachiri*, 2025 WL 2803798, at *4 (quoting *Muransky*, 979 F.3d at 925). Accordingly, the Court finds that Plaintiff's injuries of wasted time, emotional distress, and loss of sleep fail to rise to the level of concrete injury needed to establish standing.

## II. Intrusion Upon Seclusion

Plaintiff also asserts that he suffered a "non-conjectural harm analogous to intrusion upon seclusion[,]" an intangible harm capable of satisfying the injury-in-fact element of standing. Pl.'s

---

³ In *Toste*, the Court noted that it has "not yet decided in a published opinion whether emotional distress alone is a sufficiently concrete injury for standing purposes[.]" 2022 WL 4091738, at *4. Plaintiff proffers *Rivera v. Dove Inv. Corp.*, decided in 2020, which held that "without precedent holding otherwise," "allegations of emotional distress are sufficiently concrete to establish Article III standing under the FDCPA." No. 19-20934, 2021 WL 8917981, at *3 (S.D. Fla. Sept. 30, 2021). However, recent caselaw from the Eleventh Circuit suggests that "assertions of emotional distress" are insufficient to confer standing absent "actual harm . . . that would generate such psychological injuries." *Bachiri*, 2025 WL 2803798, at *3. As such, the Court finds that Plaintiff's reliance on *Rivera* is misplaced.

Resp. at 6. Plaintiff is correct that "intangible harms can satisfy Article III's concreteness requirement[.]" *Drazen v. Pinto*, 74 F.4th 1336, 1342 (11th Cir. 2023). The Eleventh Circuit has explained that because "Congress is well positioned to identify those intangible harms . . . when Congress identifies an intangible harm by enacting a law with a cause of action to redress that harm, we find its judgment instructive and important." *Id*. (citing *Hunstein v. Preferred Collection & Mgmt. Servs., Inc.*, 48 F.4th 1236, 1242 (11th Cir. 2022) and *Spokeo*, 578 U.S. at 341) (internal quotations omitted). Thus, "once Congress has identified an intangible harm, the question becomes whether that harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. at 1343 (internal quotations and citations omitted).

Here, Plaintiff asserts that "[t]he harm identified by Congress in consumer protection statutes <u>is</u> closely related and shares a 'close relationship' to the common law tort of intrusion upon seclusion." Pl.'s Resp. at 3. Plaintiff relies on *Drazen*, which held that "the harm associated with an unwanted text message shares a close relationship with the harm underlying the tort of intrusion upon seclusion" such that "the receipt of an unwanted text message causes a concrete injury." 74 F.4th at 1345. Defendants respond that "[c]onsidering the history and judgment of Congress, it is clear that the receipt of mail, delivered to a mailbox, does not bear a close relationship to the harm of intrusion upon seclusion." Defs.' Reply at 4. In furtherance of this argument, Defendants cite to this Court's opinion in *Preisler*, which, in analyzing the *Trichell* case, discussed how the Eleventh Circuit rejected the analog of intrusion upon seclusion for an FDCPA violation and "noted that the 'closest historical comparison' to FDCPA claims are 'causes of action for fraudulent or negligent misrepresentation.'"[4] *Preisler*, 2021 WL 2110794, at *4 (quoting *Trichell*,

---

[4] Plaintiff only argues that the collection letters constituted an intrusion upon seclusion and does not attempt to assert the analogs of fraudulent or negligent misrepresentation. However, even if he had, the Court notes

964 F.3d at 997–998). And "the *Trichell* Court found congressional judgment also undermined plaintiffs' purported standing because the 'serious harms' the FDCPA is intended to target 'are a far cry from whatever injury one may suffer from receiving in the mail a misleading communication that fails to mislead.'" *Id.* (quoting *Trichell*, 964 F.3d at 999).

Plaintiff's reliance on *Drazen* is misplaced. There, the Court's reasoning was based on numerous decisions finding telemarketing text messages and telephone calls constitute privacy intrusions. *Drazen*, 74 F.4th at 1344. None of the cases relied upon concerned letters delivered to a mailbox—an altogether different type of injury. *See id.* Further, "*Drazen* does not support [a] finding [that] Congress elevated receiving [] debt letter[s] to the level of a concrete harm simply because the FDCPA generally identifies privacy invasions as harms it seeks to remedy." *Heres*, 2024 WL 3291738, at *11–12 (discussing how, "unlike telephone calls, unsolicited mailings are generally not considered intrusions upon one's seclusion."). And Plaintiff fails to cite any cases where the receipt of an unwanted letter has been held to constitute an intrusion upon seclusion. Accordingly, Plaintiff fails to establish standing under this theory of intangible harm.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion for Summary Judgment, [ECF No. 40], is **GRANTED**. Pursuant to Rule 58 of the Federal Rules of Civil Procedure, final judgment will be entered by separate order.

---

that these "causes of action would require a plaintiff to 'show harm cause[d] to [him] by [his] justifiable reliance upon the false information.'" *Priesler*, 2021 WL 2110794, at *4 (quoting *Trichell*, 964 F.3d at 998). Thus, Plaintiff here would be unable to "satisfy the concreteness requirement by seeking to recover for allegedly misleading representations without alleging reliance or actual damages." *Id*.

2. This case is **DISMISSED** *without prejudice* for lack of subject-matter jurisdiction.[5]

3. Defendants' Motion to Dismiss, [ECF No. 16], and Plaintiff's Motion for Summary Judgment, [ECF No. 42], are **DENIED as moot**.[6]

4. All pending deadlines are hereby **TERMINATED**.

5. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Miami, Florida, this 24th day of December, 2025.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

---

[5] Given that Plaintiff lacks standing, the Court "do[es] not reach the merits of plaintiff['s] [claims]." *Cone Corp.*, 921 F.2d at 1203 ("[T]he plaintiffs lack standing to bring this suit; accordingly, the district court . . . should have dismissed the case."). And a dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice. *Crotwell v. Hockman-Lewis Ltd.*, 734 F.2d 767, 769 (11th Cir. 1984).

[6] Because the Court grants Defendants' Motion based on lack of standing, Plaintiff's claims fail as a matter of law.